BEFORE THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

| | |
|---|---|
| In Re COUNTRYWIDE MORTGAGE LENDING DISCRIMINATION LITIGATION | ) MDL No. _____ <br> ) <br> ) <br> ) |

## EXHIBIT VOLUME

## IN SUPPORT OF MOTION OF PLAINTIFFS GILLIAN MILLER, LAKISHA AUSTIN, ARTHUR DAVIS AND LUELLA DAVIS UNDER 28 U.S.C. § 1407 TO TRANSFER FOR CONSOLIDATED AND COORDINATED PRETRIAL PROCEEDINGS

PLAINTIFFS Gillian Miller, Lakisha Austin, Arthur Davis and Luella Davis submit the following exhibits in support of their Motion to Transfer for Consolidated and Coordinated Pretrial Proceedings:

A.    Schedule of Actions

B.    Complaints from the following cases:

- *Gillian Miller, Lakisha Austin, Arthur Davis and Luella Davis v. Countrywide Bank, a Division of Treasury Bank, N.A.; Countrywide Home Loans, Inc.; Countrywide Correspondent Lending; Full Spectrum Lending, Inc.; Loans for Residential Homes, Corp.; Summit Mortgage, LLC,* 07-CV-11275 (D. Mass 2007)

- *Gabriel Garcia v. Countrywide Financial Corporation and Countrywide Home Loans, Inc.,* CV07-1161 (C.D. Cal. 2007)

- *Sonia Jenkins v. Countrywide Home Loans, Inc., d/b/a America's Wholesale Lender,* 08CV2935 (N.D. Ill. 2008)

C.    Docket Sheets from the following cases:

•    *Gillian Miller, Lakisha Austin, Arthur Davis and Luella Davis v. Countrywide Bank, a Division of Treasury Bank, N.A.; Countrywide Home Loans, Inc.; Countrywide Correspondent Lending; Full Spectrum Lending, Inc.; Loans for Residential Homes, Corp.; Summit Mortgage, LLC*, 07-CV-11275 (D. Mass 2007)

•    *Gabriel Garcia v. Countrywide Financial Corporation and Countrywide Home Loans, Inc.*, CV07-1161 (C.D. Cal. 2007)

•    *Sonia Jenkins v. Countrywide Home Loans, Inc., d/b/a America's Wholesale Lender,* 08CV2935 (N.D. Ill. 2008)

Dated:    6/4/08

RODDY KLEIN & RYAN

Gary Klein
Shennan Kavanagh
727 Atlantic Avenue
Boston, MA 02111-2810
Telephone:  617-357-5500, ext. 15
Facsimile:  617-357-5030

*EXHIBIT A*

**Before the Judicial Panel on Multidistrict Litigation**
**MDL _____**
**In re COUNTRYWIDE LENDING**
**DISCRIMINATION LITIGATION**

───────

**SCHEDULE OF ACTIONS**

| CASE CAPTIONS | COURT | CIVIL ACTION NO. | JUDGE |
|---|---|---|---|
| Plaintiffs:<br><br>Gillian Miller; Lakisha Austin; Arthur Davis; Luella Davis<br><br>Defendants:<br><br>Countrywide Bank, a Division of Treasury Bank, N.A.; Countrywide Home Loans, Inc.; Countrywide Correspondent Lending; Full Spectrum Lending, Inc.; Loans for Residential Homes, Corp.; Summit Mortgage, LLC | D. Massachusetts | 07-cv-11275-NG | Nancy Gertner |
| Plaintiffs:<br><br>Gabriel Garcia<br><br>Defendants:<br><br>Countrywide Financial Corporation; Countrywide Home Loans, Inc. | C.D. California | EDCV07-1161-VAP | Virginia A. Phillips |
| Plaintiffs:<br><br>Sonia Jenkins<br><br>Defendants:<br>Countrywide Home Loans, Inc. d/b/a America's Wholesale Lender | N.D. Illinois, Eastern Div. | 08CV2935 | David H. Coar |
| | | | |

*EXHIBIT B*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GILLIAN MILLER, LAKISHA AUSTIN, and ARTHUR and LUELLA DAVIS on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br>vs.<br>COUNTRYWIDE BANK, A DIVISION OF TREASURY BANK, N.A., COUNTRYWIDE HOME LOANS, INC., COUNTRYWIDE CORRESPONDENT LENDING, FULL SPECTRUM LENDING, INC., LOANS FOR RESIDENTIAL HOMES, CORP. and SUMMIT MORTGAGE LLC,<br><br>        Defendants. | C.A. NO. 07-CV-11275-NG<br><br><br><br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiffs, Gillian Miller, Lakisha Austin and Arthur and Luella Davis ("Plaintiffs"), on behalf of themselves and all others similarly situated, by their undersigned attorneys, allege as follows:

1.       This is a class action brought by Plaintiffs, on behalf of themselves and other similarly situated black homeowners, against Countrywide Bank, A Division of Treasury Bank, N.A., Countrywide Home Loans, Inc. and its wholly- owned subsidiaries, Countrywide Correspondent Lending and Full Spectrum Lending, Inc. (collectively "Countrywide" or "Defendants"), under the Equal Credit Opportunity Act, 15 U.S.C. § 1691, et seq. ("ECOA") and the Fair Housing Act, 42 U.S.C. § 3601 et seq. Plaintiffs seek remedies for themselves and the

1

Class (defined in ¶ 18, below) for the discriminatory effects of the Defendants' home financing policies and practices.

2.      As described below, the Defendants have established a specific, identifiable and uniform credit pricing system, a component of which, referred to herein as the Discretionary Pricing Policy, authorizes unchecked, subjective surcharge of additional points and fees to an otherwise objective risk-based financing rate.  In other words, after a finance rate acceptable to the Defendants is determined by objective criteria (e.g., the individual's credit history, credit score, debt-to-income ratio and loan-to-value ratios), the Defendants' credit pricing policy authorizes additional discretionary financing charges and interest mark-ups.  These subjective, additional finance charges have a widespread discriminatory impact on black applicants for home mortgage loans, in violation of ECOA and the FHA.

3.      The Defendants have established policies for retail and wholesale access to their loan products that subject black financing applicants to a significantly higher likelihood of exposure to discretionary points, fees and interest mark-ups.  These costs drive up the average cost of a mortgage loan made by one of the defendants to black applicants.

4.      Plaintiffs seek declaratory and injunctive relief, disgorgement and restitution of monies disparately obtained from black borrowers.

**JURISDICTION AND VENUE**

5.      Plaintiffs invoke the jurisdiction of this Court pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court in a civil action arising under federal law.

6.      Venue is proper in this Court pursuant to 28 U.S.C. 1391(b) inasmuch as the unlawful discriminatory practice is alleged to have been committed in this District, Defendants regularly conduct business in this District, and the named Plaintiffs reside in this District.

## PARTIES

7.      Plaintiff, Gillian Miller, is a black homeowner who resides at 1485 River Street, Hyde Park, Massachusetts 02136.

8.      Plaintiff, Lakisha Austin, is a black homeowner who resides at 17 Richmere Road, Mattapan, Massachusetts 02126.

9.      Plaintiffs, Arthur and Luella Davis, are black homeowners who reside at 36R Richfield Street, Boston, MA 02125.

10.     Defendant, Countrywide Bank, a Division of Treasury Bank, N.A. ("Countrywide Bank") is a mortgage lender with a place of business at 1199 North Fairfax Street, Suite 500, Alexandria, VA, 22314.

11.     Defendant, Countrywide Home Loans, Inc. ("Countrywide Home Loans") is a mortgage lender with a principal place of business at 4500 Park Granada Blvd., Calabasas, CA 91302.

12.     Defendant, Countrywide Correspondent Lending ("Countrywide Correspondent") purchases mortgage loans from other lenders. Countrywide Correspondent Lending, is a wholly owned subsidiary of defendant Countrywide Home Loans, Inc, and has a principal place of business at 4500 Park Granada Blvd., Calabasas, CA 91302.

13.     Defendant, Full Spectrum Lending, Inc. ("Full Spectrum") originates sub-prime mortgage loans. Full Spectrum Lending is a wholly owned subsidiary of defendant Countrywide Home Loans, Inc., and has a principal place of business at 4500 Park Granada Blvd., Calabasas, CA 91302. Full Spectrum Lending is part of Countrywide Home Loans' Retail Channel.

14.     Unless otherwise stated, the Plaintiffs will refer to Countrywide Bank, Countrywide Home Loans and its wholly owned subsidiaries Countrywide Correspondent and Full Spectrum collectively as "Countrywide" or "Defendants."

15.     Defendant, Summit Mortgage, LLC, ("Summit") is a mortgage lender with a principal place of business at 301 Edgewater Place, Suite 310, Wakefield, MA 01880.

16.     Defendant, Loans For Residential Homes Mortgage Corp. ("Loans For Residential Homes Mortgage") is a mortgage broker with a principal place of business at 5586 Post Road, East Greenwich, RI 02818.

## CLASS ALLEGATIONS

17.     Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

18.     This class action is brought pursuant to ECOA and the FHA by the individual named Plaintiffs on behalf of themselves and all black consumers (the "Class") who obtained a Countrywide home mortgage loan in the United States between January 1, 2001 and the date of judgment in this action (the "Class Period") and who were subject to Countrywide's Discretionary Pricing Policy pursuant to which they paid discretionary points, fees or interest mark-ups in connection with their loan.

19.     Plaintiffs sue on their own behalf and on behalf of a class of persons under Rules 23(a) and (b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

20.     The phrase "Discretionary Pricing Policy" refers to Countrywide's policy of authorizing its loan officers, brokers and correspondent lenders to impose subjective, discretionary charges and interest mark-ups, that are included in the finance charge loans they originate.

4

21.    Plaintiffs do not know the exact size or identities of the proposed Class, since such information is in the exclusive control of the Defendant. Plaintiffs believe that the Class encompasses many thousands or tens of thousands of individuals who are geographically dispersed throughout the United States. Therefore, the proposed class is so numerous that joinder of all members is impracticable.

22.    All members of the Class have been subject to and affected by the same Discretionary Pricing Policy. There are questions of law and fact that are common to the Class, and predominate over any questions affecting only individual members of the Class. These questions include, but are not limited to the following:

a.    the nature, scope and operations of Countrywide's Discretionary Pricing Policy;

b.    whether Countrywide Bank and Countrywide Home Loans and its subsidiaries, including, without limitation, Countrywide Correspondent and Full Spectrum, are creditors under the ECOA because, for example, in the ordinary course of its business they participate in the decision of whether or not to extend credit to consumers;

c.    whether Countrywide's Discretionary Pricing Policy is a facially neutral credit pricing system that has effected racial discrimination in violation of ECOA;

d.    whether there are statistically significant disparities between the amount of the discretionary charges   imposed on black persons and the amount of the discretionary charges imposed on white persons that are unrelated to creditworthiness;

e.    whether any legitimate business reason for the Discretionary Pricing Policy can be  achieved by a credit pricing system less discriminatory in its impact;

5

f.    whether the Court can enter declaratory and injunctive relief; and

g.    the proper measure of disgorgement or damages.

23.    The claims of the individual named Plaintiffs are typical of the claims of the Class and do not conflict with the interests of any other members of the Class in that both the Plaintiffs and the other members of the Class were subject to the same Discretionary Pricing Policy that has disproportionately affected black homeowners.

24.    The individual named Plaintiffs will fairly and adequately represent the interests of the Class. They are committed to the vigorous prosecution of the Class' claims and have retained attorneys who are qualified to pursue this litigation and have experience in class actions – in particular, consumer protection and discrimination actions.

25.    A class action is superior to other methods for the fast and efficient adjudication of this controversy. A class action regarding the issues in this case does not create any problems of manageability.

26.    In the alternative, Countrywide has acted or refused to act on grounds generally applicable to the case, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

## ALLEGATIONS OF CLASS-WIDE DISCRIMINATION

27.    Countrywide is one of the largest mortgage-lending companies in the United States. Countrywide publicly promotes its home financing expertise by means of nationwide advertising campaigns. In its advertisements, Countrywide solicits persons to apply for financing with Countrywide either in one of its offices or through one of the mortgage brokers whom Countrywide has authorized to accept applications on its behalf.

28.    Countrywide makes home-mortgage loans directly to consumers through its various subsidiaries, including sub-prime loans through its subsidiary Full Spectrum.

29.    Countrywide also makes home-mortgage loans that are arranged by its network of mortgage brokers. Those loans are made in reliance on Countrywide's credit-granting policies and with the participation of Countrywide.

30.    Countrywide also obtains business through a network of correspondent lenders, such as Summit, which originates loans that Countrywide funds. Those loans are made in reliance on Countrywide's credit-granting policies and with the participation of Countrywide.

31.    Due to Countrywide's policies as to where to place its offices and how to market its products, black borrowers are more likely than white borrowers to apply for credit from Countrywide through its sub-prime subsidiary, Full Spectrum, or from an authorized broker or a correspondent lender.

32.    Because of the Discretionary Pricing Policy, loans obtained from Countrywide through Full Spectrum or Countrywide's network of brokers or correspondent lenders are more expensive, on average, than loans obtained directly from Countrywide.

33.    Based on the latest available Home Mortgage Disclosure Act ("HMDA") data, available from the Department of Housing and Urban Development, blacks who borrow from Countrywide are over three times more likely than whites to have received a high-APR loan to purchase a home and over two times more likely to have received a high-APR to refinance their home.

34.    A high-APR loan is a loan whose APR is at least three percentage points higher than the interest rate on U.S. Treasury securities of the same maturity, at the time the loan was made.

7

35.     While credit differences may explain some part of the disparities in rate and terms, Countrywide's Discretionary Pricing Policy accounts for a significant portion of the disparity.

36.     Countrywide's Discretionary Pricing Policy is unrelated to a borrower's objective credit characteristics such as credit history, credit score, debt-to-income ratio and loan-to-value ratios and results in purely subjective charges that affect the rate otherwise available to borrowers.

37.     Countrywide provides authorized mortgage brokers and correspondent lenders with substantial information about its loan programs, rates and credit criteria, as well as its policies for compensating mortgage brokers and correspondent lenders who arrange business for it.

38.     Countrywide authorizes mortgage brokers who have signed a contract with it to accept applications on its behalf, quote financing rates and terms on it (within the limitations set by Countrywide), inform credit applicants of Countrywide's financing options and to originate finance transactions using Countrywide's forms, in accordance with its policies.

39.     Countrywide authorizes its correspondent lenders to make loans based on its credit-granting policies. Countrywide funds these loans before or shortly after they are consummated.

40.     In all of the home-mortgage-finance-transactions at issue, Countrywide advances the funds to make the loans and bears some or all of the risk of default. Countrywide provides its loan officers, brokers and correspondent lenders with credit applications, loan contracts and other required financing forms, as well as instructions on filling out such documents necessary to complete home mortgage transactions.

41.    After a customer provides credit information to one of Countrywide's loan officers, brokers, or correspondent lenders, Countrywide computes a financing rate through an objective credit analysis that, in general, discerns the creditworthiness of the customer.

42.    These credit analyses consider numerous risk-related variables of creditworthiness, including credit bureau histories, payment amounts, debt ratio, bankruptcies, automobile repossessions, charge-offs, prior foreclosures, payment histories, credit score, debt-to-income ratios, loan-to-value ratios and other risk-related attributes or variables.    On information and belief, Countrywide uses these variables to determine a "mortgage score" for each credit applicant.

43.    Based on these objective risk-related variables and the resulting mortgage score, Countrywide derives a risk-based financing rate at which it would provide a home mortgage, often called the "Par Rate." Alternatively, experienced Countrywide loan officers, brokers and correspondent lenders can estimate the risk-related Par Rate by referring to the applicant's credit bureau determined credit score.

44.    Although Countrywide's initial analysis applies objective criteria to calculate this risk-related Par Rate, Countrywide then authorizes a subjective component in its credit pricing system —the Discretionary Pricing Policy — to impose additional non-risk charges. On information and belief, the applicable Par Rates and authorized discretionary charges are communicated by Countrywide to its Loan Officers, brokers and correspondent lenders via regularly published "rate sheets."   Such rate sheets are published by Countrywide via intranet and internet.

45.    The discretionary charges are paid by the customer as a component of the total finance charge (the "Contract APR"), without the homeowner knowing that a portion of their Contract APR was a non-risk-related charge.

46.    Loan officers, brokers and correspondent lenders have discretion, within the limits set by Countrywide, to impose discretionary mark-ups as additional points in interest – "a rate mark-up". When there is a rate mark-up, Countrywide shares the additional income, even if the loan is originated by a broker or correspondent lender.

47.    Countrywide's Discretionary Pricing Policy, by design, causes persons with identical or similar credit scores to pay different amounts for the cost of credit. As a result of using a subjective pricing component that is designed to charge persons with the same credit profiles different amounts of finance charge, the objective qualities of the initial credit analysis used to calculate the Par Rate are undermined and the potential for race bias becomes inherent in the transaction.

48.    The Discretionary Pricing Policy, although facially neutral (insofar as Countrywide uses the same or effectively the same policy for all credit applicants), has a disproportionately adverse effect on blacks compared to similarly situated whites in that blacks pay disparately more discretionary charges (both in frequency and amount) than similarly situated whites.  Statistical analysis of discretionary charges imposed on black and white customers of other mortgage companies that use credit pricing systems structured like that of Countrywide has revealed that blacks, after controlling for credit risk, are substantially more likely than similarly situated whites to pay such charges.

49.    Loan officers, brokers and correspondent lenders are agents of Countrywide for the purpose of setting credit price, which is always set based on Countrywide's policy.

10

50.    The disparate impact suffered by blacks is a direct result of Countrywide's Discretionary Pricing Policy in that Countrywide designed, disseminated, controlled, implemented and profited from the Discretionary Pricing Policy creating the disparate impact.

51.    Countrywide has a non-delegable duty to ensure that its mortgage financing structure and policies do not have a disparate impact on legally protected classes, such as blacks. Despite having such a non-delegable duty, Countrywide has chosen to use, and on information and belief, continues to use, a commission-driven, subjective pricing policy that it knows or should have known has a significant and pervasive adverse impact on black homeowners.

52.    The disparities between the terms of Countrywide's transactions involving black homeowners and the terms involving whites homeowners cannot be a product of chance and cannot be explained by factors unrelated to race, but, instead, are the direct causal result of the use of the discriminatory Discretionary Pricing Policy.

53.    There are no legitimate business reasons justifying Countrywide's discriminatory Discretionary Pricing Policy that could not be achieved by a policy that has no discriminatory impact or a greatly reduced discriminatory impact.

### ALLEGATIONS OF NON-DISCLOSURE – FRAUDULENT CONCEALMENT (TOLLING)

54.    Commission-driven, discretionary pricing systems – such as those in the real estate mortgage industry that are structurally similar to the system utilized by Countrywide – have been found to produce significant discriminatory effects.  Knowledge concerning the significant and pervasive discriminatory impact of such commission-driven, discretionary credit pricing systems has been widely circulated throughout the financing industry for several years, particularly since 1994, as a result of numerous high profile actions by the United States

11

Department of Justice and federal regulatory agencies. Countrywide, as one of the largest mortgage companies in the United States, has known or should have known that its credit pricing system causes blacks to pay the Defendant more for mortgage financing than the amounts paid by white customers with identical or effectively identical credit scores. The following various regulatory settlements involved discriminatory pricing policies structurally similar to Countrywide's pricing policy and were widely reported through the financing industry:

> United States v. Blackpipe State Bank, Civ. Act. No. 93-5115 (D. S.D. filed November 16, 1993)(charging American Indians higher interest rates)

> United States v. First National Bank of Vicksburg, No. 5:94 CV 6(B)(N) (S.D. Miss. filed Jan. 21, 1994) (charging African-Americans higher interest rates)

> United States v. Huntington Mortgage Co., No. 1; 95 CV 2211 (N.D. Ohio filed October 18, 1995)(charging African-Americans higher fees)

> United States v. Security State Bank of Pecos, No. SA 95 CA 0996 (W.D.Tex. filed October 15, 1995)(charging Hispanics higher interest rates)

> United States v. First National Bank of Gordon, No. CIV-96-5035 (W.D.S.D. filed April 15, 1996)(charging American Indians higher interest rates)

> United States v. Fleet Mortgage Corp., No. 96-2279 (E.D.N.Y. filed May 7, 1996)(charging African-Americans and Hispanics higher interest rates)

> United States v. Long Beach Mortgage Co., No. CV-96-6159 (C.D. Cal. filed Sept. 5, 1996)(charging African-Americans, Latinos, women and persons over age 55 higher interest rates)

55.    Despite the fact that Countrywide has known or should have known of the discriminatory effect of its credit pricing policy, none of the loan documents inform the customer that its finance rates are subjective and not based solely on risk-related characteristics.

56.    Although, pursuant to Countrywide's Discretionary Pricing Policy, the final credit rate that a customer pays for credit is subjective, Countrywide's advertisements, marketing materials and financing documents universally create and foster the image that Countrywide

offers non-negotiable, competitive finance rates that are objectively set by Countrywide based on credit-risk factors.

57.     Despite spending millions of dollars annually on advertising, marketing materials, and the creation and distribution of Countrywide financing documents that falsely create and foster the image that Countrywide offers competitive rates that are objectively set, the Defendant never discloses the truth to its credit applicants concerning the fact that: (a) its credit rates are subjective and can vary significantly among persons with identical credit profiles, and (b) that it has authorized and provided a financial incentive to its loan officers, authorized brokers and correspondent lenders to subjectively increase the credit rate above the rate otherwise available to homeowners.

58.     Countrywide's black customers, due to the inherent nature of the Countrywide's undisclosed pricing system and due to Countrywide's deception and concealment, have no way of knowing or suspecting (a) the existence of Countrywide's subjective credit pricing policy; (b) that they were charged additional subjective credit charges; and (c) that they were charged a disproportionately greater amount for their cost of credit than similarly situated white persons.

### FACTUAL ALLEGATIONS

#### *Facts Relating To Plaintiff Gillian Miller*

59.     Gillian Miller resides at 1485 River St., Hyde Park, MA with her 3 children, ages 11, 14, and 20.

60.     In late 2005, early 2006, when Ms. Miller was seeking financing to purchase the Hyde Park home, her realtor referred her to Rachel Kemp of Summit Mortgage.

61.     Ms. Miller met with Ms. Kemp on several occasions to discuss the terms of financing. The meetings took place at Dunkin Donuts and at Ms. Miller's place of employment.

13

62.     On January 31, 2006, Ms. Miller entered into a mortgage transaction with Summit Mortgage as lender. The transaction was divided into two loans.

63.     The larger loan (Loan No. 53060025) was a 30-year, adjustable rate loan with a disclosed APR of 11.522%. The loan amount was $259,200.00. According to the note, the loan had a six-month variable rate feature.

64.     According to the HUD-One Settlement Statement, Ms. Miller paid $9,423.34 in settlement charges in connection with the larger loan, including, a 2% or $5,184 loan origination fee to Summit Mortgage, a $300 processing fee to Summit Mortgage LLC, and a $275 underwriting fee to Summit Mortgage, LLC. In addition, Ms. Miller paid a $300 application fee to Summit Mortgage LLC outside closing.

65.     The smaller loan (Loan No. 53060026), which had a loan amount of $64,800, is a 15-year fixed rate loan with a balloon feature, providing for a final payment of $55,245.25. The APR of the smaller loan is 11.317%.

66.     True and correct copies of Truth-in-Lending disclosure and HUD-One Settlement Statement provided in connection with Loan No. 53060025 are attached hereto and labeled Exhibit 1 and Exhibit 2, respectively.

67.     True and correct copies of Truth-in-Lending disclosure and HUD-One Settlement Statement provided in connection with Loan No. 53060026 are attached hereto and labeled Exhibit 3 and Exhibit 4, respectively.

68.     On information and belief, Countrywide Correspondent Lending table-funded the loans originated by Summit Lending.

14

69.    At the time of the transaction, Ms. Miller had a credit score that would have qualified with many lenders for a mortgage in the prime-market. Instead, Ms. Miller received mortgages at sub-prime rates and on sub-prime terms.

70.    According to Countrywide Correspondent Lending's commitment letter, dated January 26, 2006, Ms. Miller had a CHL credit grade of AA+.

71.    By notice dated January 31, 2006, the date the loans closed, Summit Mortgage assigned, sold or transferred the mortgage loans to Countrywide Home Loans, Inc.

72.    On information and belief, unbeknownst to Ms. Miller, the contract APR on the mortgage loans was actually a combination of an objective, risk-based calculation and a totally subjective, discretionary component added pursuant to the Countrywide's Discretionary Pricing Policy.

73.    On information and belief, Ms. Miller was subject to Countrywide's Discretionary Pricing Policy.

74.    On information and belief, Ms. Miller was charged a disproportionately greater amount in non-risk-related credit charges than similarly situated white persons.

**_Facts Relating to Plaintiff Lakisha Austin_**

75.    Lakisha Austin resides at 17 Richmere Road, Mattapan, with her one-year old son.

76.    Ms. Austin purchased her Mattapan home in September 2004 with financing from Full Spectrum.

77.    When Ms. Austin was seeking financing to purchase the Mattapan home, her realtor at Burton Associates referred her to Countrywide Home Loan Consultant, Mark Coleman.

78.     Mr. Coleman is featured on Burton Associates' promotional materials and its website and, on information and belief, does some business out of Burton Associates' Dorchester office.

79.     Mr. Coleman provided Ms. Austin a Full Spectrum loan application, which she completed and submitted via email.

80.     On September 22, 2004, Ms. Austin entered into a mortgage transaction with Full Spectrum as lender. The transaction was divided into two loans.

81.     The larger loan (Loan No. 83247007) was a 30-year, adjustable rate loan with a disclosed APR of 8.156%. The loan amount was $297,600.00. According to the note, the loan had a three-year variable rate feature, and payments made during the first three years would only apply to interest.

82.     According to the HUD-One Settlement Statement, Ms. Austin paid $10,954.99 in settlement charges in connection with the larger loan, including, a 2% or $5,952 loan discount fee to Full Spectrum, and a $535 processing fee to Full Spectrum.

83.     Ms. Austin believes and therefore avers that she was not provided with a "discount" of any kind on the rate in the transaction.

84.     Ms. Austin was never offered an alternative loan with a higher rate that did not involve payment of discount points, and therefore had no opportunity to evaluate whether the "discount" would be advantageous to her.

85.     The smaller loan (Loan No. 66997971), which had a loan amount of $74,400, is a 20-year fixed rate loan with an APR of 10.094%.

16

86.    True and correct copies of Truth-in-Lending disclosure and HUD-One Settlement Statement provided in connection with Loan No. 83247007 are attached hereto and labeled Exhibit 5 and Exhibit 6, respectively.

87.    True and correct copies of Truth-in-Lending disclosure and HUD-One Settlement Statement provided in connection with Loan No. 66997971 are attached hereto and labeled Exhibit 7 and Exhibit 8, respectively.

88.    At the time of the transaction, Ms. Austin had a credit score that would have qualified with many lenders for a mortgage in the prime-market. Instead, Ms. Austin received mortgages at sub-prime rates and on sub-prime terms.

89.    On information and belief, unbeknownst to Ms. Austin, the contract APR on the mortgage loans was actually a combination of an objective, risk-based calculation and a totally subjective, discretionary component added pursuant to the Countrywide's Discretionary Pricing Policy.

90.    On information and belief, Ms. Austin was subject to Countrywide's Discretionary Pricing Policy.

91.    On information and belief, Ms. Austin was charged a disproportionately greater amount in non-risk-related credit charges than similarly situated white persons.

### Facts Relating to Plaintiff Arthur and Luella Davis

92.    Arthur and Luella Davis ("the Davises") reside at 36R Richfield Street, Boston, Massachusetts.

93.    In May or June 2005, the Davises received a telephone call from loan broker Kevin Igle, a loan broker for Loans for Residential Home Mortgages "Residential Home Mortgages," a Rhode Island mortgage brokerage.

94.    The Davises refinanced their Dorchester home on August 31, 2005 with a loan arranged by Residential Home Mortgages.

95.    The lender in the transaction was Countrywide Bank.

96.    The August 31, 2005 refinance transaction (Loan No. 97460612) was a 30-year, adjustable rate loan with a disclosed APR of 8.269%. The loan amount was $231,000.00.

97.    According to the HUD-One Settlement Statement, the Davises paid $8,335.27 in settlement charges in connection with their loan, including, a $4,500.00 broker fee and $499.00 broker processing fee to Loans for Residential Homes. In addition, Loans For Residential Homes received a 2% or $4,620.00 yield spread premium from Countrywide Bank, which was paid outside closing.

98.    True and correct copies of Truth-in-Lending disclosure and HUD-One Settlement Statement provided in connection with the loan are attached hereto and labeled Exhibit 9 and Exhibit 10, respectively.

99.    On information and belief, unbeknownst to the Davises, the contract APR on the mortgage loans was actually a combination of an objective, risk-based calculation and a totally subjective, discretionary component added pursuant to Countrywide's Discretionary Pricing Policy.

100.    On information and belief, the Davises were subject to Countrywide's Discretionary Pricing Policy.

101.    On information and belief, the Davises were charged a disproportionately greater amount in non-risk-related credit charges and fees than similarly situated white persons.

**COUNT I**
**(DISCRIMINATION IN VIOLATION OF THE EQUAL CREDIT OPPORTUNITY ACT**
**AGAINST ALL DEFENDANTS EXCEPT SUMMIT BY PLAINTIFFS ON**
**BEHALF OF THE CLASS)**

102.    Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

103.    Countrywide is a creditor as defined in ECOA, and in the ordinary course of its business, participated in the decision of whether or not to extend credit to the Plaintiffs, the proposed Class representatives herein, and all prospective Class members.

104.    Countrywide designed, disseminated, controlled, implemented and profited from the discriminatory policy and practice alleged herein — the Discretionary Pricing Policy — which has had a disparate economic impact on blacks compared to similarly situated whites.

105.    All actions taken by the Countrywide loan officers and Countrywide's brokers and correspondent lenders were in accordance with the specific authority granted to them by Countrywide and were in furtherance of Countrywide's policies and practices.

106.    As a result of Countrywide's Discretionary Pricing Policy, Countrywide has collected more in finance charges from blacks than from similarly situated white persons, for reasons totally unrelated to credit risk.

107.    Countrywide's Discretionary Pricing Policy violates the Equal Credit Opportunity Act.

108.    Plaintiff and prospective class members are aggrieved persons as defined in ECOA by virtue of having been subject to the discriminatory, Discretionary Pricing Policy.

**COUNT II**
**(DISCRIMINATION IN VIOLATION OF THE**
**FAIR HOUSING ACT AGAINST ALL DEFENDANTS EXCEPT SUMMIT BY**
**PLAINTIFS ON BEHALF OF THE CLASS)**

109.    Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

110.    Countrywide engaged in residential real estate-related transactions with respect to the Plaintiffs, the proposed Class representatives herein, and all prospective Class members.

111.    Countrywide's Discretionary Pricing Policy has resulted in discrimination with respect to the Plaintiffs, the proposed Class representatives herein, and all prospective members of the Class.

112.    As a result of Countrywide's Discretionary Pricing Policy, Countrywide has collected more in finance charges from blacks than from similarly situated white persons, for reasons totally unrelated to credit risk.

113.    Countrywide's Discretionary Pricing Policy violates the Fair Housing Act and constitutes actionable discrimination on the basis of race.

114.    Plaintiff and the Class are aggrieved persons as defined in FHA by virtue of having been subject to the discriminatory, Countrywide's Discretionary Pricing Policy.

## COUNT III
### (DISCRIMINATION IN VIOLATION OF THE
### EQUAL CREDIT OPPORTUNITY ACT AGAINST SUMMIT BY PLAINTIFF GILLIAN MILLER ON BEHALF OF HERSELF, INDIVIDUALLY)

115.    Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

116.    Summit is a creditor as defined in ECOA, and in the ordinary course of its business, participated in the decision of whether or not to extend credit to the Plaintiff.

117.    The Plaintiff, Ms. Miller, is a member of a protected class.

118.    Following her credit application, Summit extended credit to Ms. Miller on sub-prime rather than prime terms because of her race.

119.    During the same period, Summit extended credit to similarly situated white borrowers on prime terms.

120.    Summit's conduct violates the Equal Credit Opportunity Act.

121.    Ms. Miller is an aggrieved person as defined in ECOA by virtue of having been subject to this disparate treatment.

**COUNT IV**
**(DISCRIMINATION IN VIOLATION OF THE**
**FAIR HOUSING ACT AGAINST SUMMIT BY PLAINTIFF GILLIAN MILLER ON**
**BEHALF OF HERSELF, INDIVIDUALLY)**

122.    Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

123.    Summit engaged in residential real estate-related transactions with respect to Ms. Miller.

124.    The Plaintiff, Ms. Miller, is a member of a protected class.

125.    Following her credit application, Summit extended credit to Ms. Miller on sub-prime rather than prime terms because of her race.

126.    During the same period, Summit extended credit to similarly situated white borrowers on prime terms.

127.    Summit's conduct violates the FHA.

128.    Ms. Miller is an aggrieved person as defined in FHA by virtue of having been subject to this disparate treatment.

**COUNT V**
**(DISCRIMINATION IN VIOLATION OF THE**
**EQUAL CREDIT OPPORTUNITY ACT AGAINST LOANS FOR RESIDENTIAL**
**HOMES BY PLAINTIFFS ARTHUR AND LUELLA DAVIS ON BEHALF OF**
**THEMSELVES, INDIVIDUALLY)**

129.    Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

130.    Loans For Residential Homes is a creditor as defined in ECOA, and in the ordinary course of its business, participated in the decision of whether or not to extend credit to the Plaintiff.

131.    The Davises are members of a protected class.

132.     Following their credit application, Loans For Residential Homes discriminated against the Davises by charging them discretionary fees in amounts in excess of fees they charged similarly situated white borrowers.

133.     Loans For Residential Homes' conduct violates the Equal Credit Opportunity Act.

134.     The Davises are aggrieved persons as defined in ECOA by virtue of having been subject to this disparate treatment.

**COUNT VI**
**(DISCRIMINATION IN VIOLATION OF THE**
**FAIR HOUSING ACT AGAINST LOANS FOR RESIDENTIAL HOMES BY**
**PLAINTIFFS ARTHUR AND LUELLA DAVIS ON BEHALF OF THEMSELVES,**
**INDIVIDUALLY)**

135.     Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

136.     Loans For Residential Homes engaged in residential real estate-related transactions with respect to the Davises.

137.     The Davises are members of a protected class.

138.     Following their credit application, Loans For Residential Homes discriminated against the Davises by charging them discretionary fees in amounts in excess of fees they charged similarly situated white borrowers.

139.     Loans For Residential Homes' conduct violates the Fair Housing Act.

140.     The Davises are aggrieved persons as defined in FHA by virtue of having been subject to this disparate treatment.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs respectfully request the following relief:

*On behalf of the Class:*

a.      Certify this case as a class action and certify the named Plaintiffs herein to be adequate class representative and her counsel to be class counsel;

b.      Enter a judgment, pursuant to 15 U.S.C. 1691e(c) and/or 42 U.S.C. § 3613, declaring the acts and practices of Defendants complained of herein to be in violation of ECOA and the FHA;

c.      Grant a permanent or final injunction, pursuant to 15 U.S.C. 1691e(c) and/or 42 U.S.C. § 3613(c), enjoining the Defendants, and the Defendants' agents and employees, affiliates and subsidiaries, from continuing to discriminate against plaintiffs and the members of the Class because of their race through further use of the Discretionary Pricing Policy or any non-risk-related Discretionary pricing policy employed by the Defendants;

d.      Order the Defendants, pursuant to 15 U.S.C. § 1691e(c) and/or 42 U.S.C. § 3613(c), to adopt and enforce a policy that requires appropriate training of the Defendants' employees and its brokers and correspondent lenders to prevent discrimination;

e.      Order Countrywide Home Loans, pursuant to 15 U.S.C. § 1691e(c) and/or 42 U.S.C. § 3613(c), to monitor and/or audit the racial pattern of its financings to ensure the cessation of discriminatory effects in its home mortgage transactions;

f.      Order disgorgement, pursuant to 15 U.S.C. § 1691e (c), of all disproportionate non-risk charges imposed on blacks by the Defendants' Discretionary Pricing Policy; and order the equitable distribution of such charges, as restitutionary relief, to all appropriate class members;

g.      Order actual and punitive damages to the Plaintiff and the class pursuant to 42 U.S.C. § 3613(c);

23

h.    Award Plaintiffs the costs of this action, including the fees and costs of experts, together with reasonable attorneys' fees, pursuant to 15 U.S.C. § 1691e(d) and/or 42 U.S.C. § 3613(c); and

i.    Grant Plaintiffs and the Class such other and further relief as this Court finds necessary and proper.

*On behalf of Ms. Miller:*

j.    Order actual and punitive damages to the Plaintiff pursuant to 42 U.S.C. § 3613(c);

k.    Award Ms. Miller the costs of this action, including the fees and costs of experts, together with reasonable attorneys' fees, pursuant to 15 U.S.C. § 1691e(d) and/or 42 U.S.C. § 3613(c); and

l.    Grant Ms. Miller such other and further relief as this Court finds necessary and proper.

*On behalf of the Davises:*

m.    Order actual and punitive damages to the Davises pursuant to 42 U.S.C. § 3613(c);

n.    Award the Davises the costs of this action, including the fees and costs of experts, together with reasonable attorneys' fees, pursuant to 15 U.S.C. § 1691e(d) and/or 42 U.S.C. § 3613(c); and

o.    Grant the Davises such other and further relief as this Court finds necessary and proper.

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted,
On Behalf of the Plaintiffs,


/s/ Gary Klein
    Gary Klein

Gary Klein (BBO # 560769)
Shennan Kavanagh (BBO # 655174)
Gillian Feiner (BBO # 664152)
RODDY KLEIN & RYAN
727 Atlantic Avenue
Boston, MA  02111-2810
Telephone: (617) 357-5500 ext. 15
Facsimile:  (617) 357-5030


Marvin A. Miller
Matthew E. VanTine
Lori A. Fanning
MILLER LAW LLC
115 South LaSalle Street, Suite 2910
Chicago, IL  60603
Telephone:  (312) 332-3400


Samuel H. Rudman
Robert M. Rothman
Mark S. Reich
LERACH COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  (631) 367-7100
Facsimile:  (631) 367-1173


Thomas M. Sobol (BBO # 471770)
Gregory Matthews (BBO # 653316)
HAGENS BERMAN SOBOL SHAPIRO LLP
One Main Street, 4th Floor
Boston, MA 02142
Telephone: (617) 475-1950
Facsimile: (617) 482-3003

DATE: July 12, 2007

1  BONNETT, FAIRBOURN, FRIEDMAN
   & BALINT, P.C.
2  Andrew S. Friedman (to seek pro hac vice admission)
3  Wendy J. Harrison (CA 151090)
   2901 North Central Avenue, Suite 1000
4  Phoenix, Arizona 85012
5  Telephone: (602) 274-1100
           afriedman@BFFB.com
6          wharrison@BFFB.com
7
   CHAVEZ & GERTLER, L.L.P.
8  Mark A. Chavez (SBN 90858)
9  Jonathan Gertler (SBN 111531)
   Nance F. Becker (SBN 99292)
10 42 Miller Avenue
11 Mill Valley, California 94941
   Telephone: (415) 381-5599
12         mark@chavezgertler.com
13         nance@chavezgertler.com

14                    UNITED STATES DISTRICT COURT

15                  CENTRAL DISTRICT OF CALIFORNIA

16
     GABRIEL GARCIA,                )  No. EDCV07-1161 VAP(JCRx)
17                                  )
                                    )  CLASS ACTION
18                                  )
            Plaintiff,              )
19                                  )  CLASS ACTION COMPLAINT FOR:
                                    )
20                                  )  1. Violations of the Equal
            v.                      )     Credit Opportunity Act;
21                                  )
                                    )  2. Violations of the Fair
22                                  )     Housing Act;
     COUNTRYWIDE FINANCIAL          )
23   CORPORATION and                )  3. Violations of the Civil
     COUNTRYWIDE HOME LOANS,        )     Rights Act, 42 U.S.C.
24   INC.,                          )     §1981; and
25                                  )
                                    )  4. Violations of the Civil
26          Defendants.             )     Rights Act, 42 U.S.C.
27                                  )     §1982.
                                    )
28                                  )  DEMAND FOR JURY TRIAL

                                       CLASS ACTION COMPLAINT

1.      Plaintiff Gabriel Garcia ("Garcia" or "Plaintiff"), by and through his
attorneys, brings this action against Countrywide Financial Corporation and
Countrywide Home Loans, Inc. (together, "COUNTRYWIDE" or "Defendant")
seeking redress for racially discriminatory lending practices under the Equal Credit
Opportunity Act, 15 U.S.C. § 1691, et seq. ("ECOA"), the Fair Housing Act, 42
U.S.C. § 3601 et seq ("FHA"), and the Civil Rights Act, 42 U.S.C. §§ 1981 and
1982, on behalf of himself and all others similarly situated.

## INTRODUCTION

2.      This class action challenges Defendant COUNTRYWIDE's racially
discriminatory mortgage lending practices. Defendant COUNTRYWIDE has
engaged in both intentional and disparate impact discrimination through its
development and implementation of mortgage pricing policies and procedures that
provide financial incentives to its authorized loan officers, mortgage brokers and
correspondent lenders to make subjective decisions to increase interest rates,
charge additional fees, and impose unfavorable terms and costs on minority
borrowers.

3.      Defendant COUNTRYWIDE's authorized loan officers, mortgage
brokers and correspondent lenders are given discretion – and actually encouraged
and incentivized – to increase interest rates, charge additional fees, and include
prepayment penalties and other less favorable terms in loans to certain borrowers.
These policies directly lead to minorities receiving home loans with higher interest
rates and higher fees and costs than similarly situated non-minority borrowers.

4.      As used in this Complaint, "minority" or "minorities" shall refer to all
non-Caucasians and other minority racial groups protected under 42 U.S.C. §§
1981, 1982, and 3604, and 15 U.S.C. § 1691.

5.      Plaintiff brings this action on behalf of all minorities (hereinafter
collectively referred to as the "Class" or "members of the Class") who have
entered into residential mortgage loan contracts that were financed or purchased by

- 1 -

1  Defendant COUNTRYWIDE, and who have been subjected to racial
2  discrimination.

3       6.      Plaintiff seeks injunctive, declaratory, and equitable relief, punitive
4  damages, and other monetary and non-monetary remedies for Defendant
5  COUNTRYWIDE's racially discriminatory conduct.

6                      **JURISDICTION AND VENUE**

7       7.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331, which gives
8  this Court original jurisdiction over civil actions arising under federal law.

9       8.      Venue is proper in this Court pursuant to 28 U.S.C. 1391(b) because a
10  substantial part of the events giving rise to Plaintiff's and the Class's claims
11  occurred in this District.  In particular, Plaintiff Garcia resides in this District and
12  Defendant financed Plaintiff's purchase of property located in this District.

13                              **PARTIES**

14       9.      Plaintiff Gabriel Garcia is a Latino homeowner who resides at 10045
15  Amherst Avenue, Montclair, CA 91763.

16       10.     Defendant Countrywide Financial Corporation is a diversified
17  financial services company which provides mortgage banking and loan services
18  through its subsidiary, defendant Countrywide Home Loans, and other companies
19  in the "Countrywide family."  Countrywide Financial and its affiliated companies
20  operate throughout the United States, including in California.

21       11.     Defendant Countrywide Home Loans, Inc. is a mortgage lender with
22  its principal place of business in Calabasas, California.  Mr. Garcia's loan was
23  funded  and initially serviced by COUNTRYWIDE's office in Anaheim,
24  California.

25  ///
26  ///
27  ///
28  ///

- 2 -

1

## FACTS

2

### I.   HISTORICAL DISCRIMINATION IN AMERICAN MORTGAGE LENDING

3

4    12.    Racial discrimination in America's mortgage lending industry has a

5    long legacy. As this Complaint attests, that unfortunate history continues to this

6    day due to discriminatory treatment of minority borrowers by mortgage banks such

7    as Defendant COUNTRYWIDE.

8    13.    The Joint Center for Housing Studies at Harvard University conducted

9    a study in 2005 called "The Dual Mortgage Market: The Persistence of

10   Discrimination in Mortgage Lending," which summarizes that history well. It

11   states that "[i]n the immediate post-World War II period, racial discrimination in

12   mortgage lending was easy to spot. From government-sponsored racial covenants

13   in the Federal Housing Administration (FHA) guidelines to the redlining practices

14   of private mortgage lenders and financial institutions, minorities were denied

15   access to home mortgages in ways that severely limited their ability to purchase a

16   home. Today, mortgage lending discrimination is more subtle. . . . [M]ore than

17   three decades after the enactment of national fair lending legislation, minority

18   consumers continue to have less-than-equal access to loans at the best prices and

19   on the best terms that their credit history, income, and other individual financial

20   considerations merit."

21   14.    The federal Home Mortgage Disclosure Act ("HMDA") requires

22   mortgage lenders to report information about the home loans they process each

23   year. In 2005, lenders reported information on more than 30 million home loan

24   applications pursuant to HMDA. In 1989, Congress required lenders to begin

25   disclosing information about mortgage borrowers' race and ethnicity. In 2004,

26   concerned with potential racial discrimination in loan pricing, and recognizing that

27   racial or other types of discrimination can occur when loan officers and mortgage

28   brokers have latitude in setting interest rates, the Federal Reserve Board began

- 3 -

1  requiring lenders to also report information concerning rates, points, and fees,
2  charged to borrowers on high-cost loans.

3      15.    HMDA data for 2004 reveals profound loan pricing disparities
4  between Hispanic borrowers and non-Hispanic whites even after controlling for
5  borrowers' gender, income, property location, and loan amount. After accounting
6  for those differences in the 2004 HMDA data, Hispanic borrowers were still almost
7  twice as likely to receive a higher-rate home loan as non-Hispanic whites.
8  (http://www.responsiblelending.org/pdfs/Testimony-Ernst061306.pdf (last viewed
9  August 14, 2007).) In a speech last year, the Vice-Chairman of the Federal
10 Deposit Insurance Corporation, Martin Gruenberg, discussed the 2004 HMDA data
11 and observed that that data "clearly indicated" that Hispanics are more likely to
12 receive high-cost home loans than are non-Hispanic whites.
13 (http://www.fdic.gov/news/news/speeches/archives/2006/chairman/spoct1806.html
14 (last viewed August 15, 2007).)

15     16.    Likewise, HMDA data for 2005 shows that "for conventional home-
16 purchase loans, the gross mean incidence of higher-priced lending was 54.7
17 percent for blacks and 17.2 percent for non-Hispanic whites, a difference of 37.5
18 percentage points." Id. at A159. The situation is similar for refinancings, where
19 there is a difference of 28.3 percentage points between blacks and non-Hispanic
20 whites. Avery, Brevoort, and Canner, Federal Reserve Bulletin, A124, A159.

21     17.    The Association of Community Organizations for Reform Now
22 (ACORN) released a report entitled "The High Cost of Credit: Disparities in High-
23 priced Refinanced Loans to Minority Homeowners in 125 American Cities," dated
24 September 27, 2005, which found that "[i]n every metropolitan area where at least
25 50 refinances were made to African-American homeowners, African-Americans
26 were more likely to receive a high-cost loan than White homeowners."

27     18.    Defendant COUNTRYWIDE's lending practices are of a piece with
28 the foregoing history.

-4-

1   **II.   PAST AS PROLOGUE: DEFENDANT COUNTRYWIDE'S**
2       **DISCRIMINATORY LENDING POLICIES**

3       **A.   Defendant Countrywide's Relationships With Its Mortgage**
4            **Brokers And Correspondent Lenders**

5       19.   Defendant COUNTRYWIDE represents itself as "America's #1 home
6   lender" as well as "America's #1 Lender to Minorities."
7   http://about.countrywide.com/about/about.aspx (last visited September 4, 2007). It
8   originates and funds mortgage loans through loan officers, brokers and through a
9   network of correspondent lenders. On information and belief, the loan officers,
10  mortgage brokers and correspondent lenders that work with COUNTRYWIDE
11  broker and fund loans in collaboration with COUNTRYWIDE, and in
12  conformance with COUNTRYWIDE's credit-pricing policies and procedures.

13      20.   COUNTRYWIDE's Consumer Markets Division offers residential
14  mortgages, equity lines and other financial products directly to qualified consumers
15  and to real estate professionals and builders. COUNTRYWIDE's Wholesale
16  Lending Division, "America's Wholesale Lender," provides home loans to
17  consumers whose loans are originated and processed by the 35,000 mortgage
18  brokers who work with COUNTRYWIDE.
19  http://about.countrywide.com/CFC/mortgagebanking.aspx (last visited September
20  7, 2007).

21      21.   Especially through its Wholesale Lending Division,
22  COUNTRYWIDE has followed – and continues to follow – discretionary loan
23  pricing procedures that cause minority borrowers to purchase loans with
24  prepayment penalties and other unfavorable terms, and to pay subjective fees such
25  as yield spread premiums and other mortgage-related finance charges, at higher
26  rates and than similarly situated non-minority borrowers. Defendant
27  COUNTRYWIDE has intentionally discriminated against Plaintiff and Class
28  Members through these policies and procedures – systematically giving them

- 5 -

1  mortgage loans with less favorable conditions than were given to similarly situated
2  non-minority borrowers. This pattern of discrimination is not the result of random
3  or non-discriminatory factors. Rather, it is a direct result of Defendant
4  COUNTRYWIDE's mortgage lending policies and procedures.

5      22.    On information and belief, Defendant COUNTRYWIDE's authorized
6  loan officers, mortgage brokers and correspondent lenders receive part or all of
7  their compensation from Defendant COUNTRYWIDE based on the interest rate
8  and terms, such as late payment penalties and adjustable interest rates, charged to
9  the borrower. Defendant COUNTRYWIDE's in-house loan officers, authorized
10 brokers and correspondent lenders receive more compensation from Defendant
11 COUNTRYWIDE when they steer their clients into COUNTRYWIDE loans with
12 higher interest rates, penalties and fees, and less compensation when they place
13 their clients into COUNTRYWIDE loans with lower interest rates, penalties and
14 fees.

15     23.    Defendant COUNTRYWIDE intentionally and actively implements
16 this discriminatory credit-pricing policy in a number of ways, including actively
17 educating its loan officers and brokers about COUNTRYWIDE's credit policies
18 and procedures, offering a biased commission structure, and directing its loan
19 officers and brokers regarding the marketing of COUNTRYWIDE loan products.

20     24.    These credit-pricing policies and procedures permit Defendant
21 COUNTRYWIDE's authorized loan officers, mortgage brokers and correspondent
22 lenders subjectively to charge certain loan applicants yield spread premiums and
23 other discretionary charges, including minority loan applicants.

24     25.    This pattern of discrimination cannot be justified by business
25 necessity, and could be avoided through the use of alternative policies and
26 procedures that have less discriminatory impact and no less business efficacy.
27 ///
28 ///

-6-

**B. Defendant COUNTRYWIDE's Discretionary Credit Pricing System: Designed to Discriminate**

26. Defendant COUNTRYWIDE discriminates through its authorized mortgage brokers. Authorized mortgage brokers act as Defendant COUNTRYWIDE's agents in originating mortgage loans. Authorized mortgage brokers enter into agreements with Defendant COUNTRYWIDE to accept loan applications on behalf of Defendant COUNTRYWIDE; communicate to loan applicants financing terms and rates set by Defendant COUNTRYWIDE; tell loan applicants about Defendant COUNTRYWIDE's various financing options; and ultimately originate mortgage loans funded by Defendant COUNTRYWIDE using Defendant COUNTRYWIDE's forms and in accordance with Defendant COUNTRYWIDE's policies and procedures.

27. Likewise with Defendant COUNTRYWIDE's authorized correspondent lenders and loan officers, who also act as Defendant COUNTRYWIDE's agents in originating loans. Correspondent mortgage lenders and loan officers that work with Defendant COUNTRYWIDE make loans in accordance with Defendant COUNTRYWIDE's credit policies and procedures. Defendant COUNTRYWIDE funds correspondent-generated loans before or shortly after they go to closing.

28. Defendant COUNTRYWIDE, then, funds loans originated by its loan officers, authorized mortgage brokers and correspondent lenders, sets the terms and conditions of credit on those loans, and shoulders part or all of the risk on such loans. Defendant COUNTRYWIDE actively and intentionally enforces its credit policies through its authorized loan officers, mortgage brokers and correspondent lenders in a variety of ways. Among other things, Defendant COUNTRYWIDE supplies its loan officers, correspondent lenders and mortgage brokers with an array of loan-related forms and agreements, including loan contracts, loan applications, and instructions on completing loan applications and contracts. And,

- 7 -

1   as noted above, COUNTRYWIDE actively trains its authorized brokers to follow

2   COUNTRYWIDE's policies and procedures, and reinforces that training with

3   marketing support.

4       29.    Once a loan applicant has provided credit information to Defendant

5   COUNTRYWIDE through a loan officer, mortgage broker or correspondent

6   lender, Defendant COUNTRYWIDE performs an initial objective credit analysis.

7   At that point, Defendant COUNTRYWIDE evaluates numerous risk-related credit

8   variables, including debt-to-income ratios, loan-to-value ratios, credit bureau

9   histories, debt ratios, bankruptcies, automobile repossessions, prior foreclosures,

10   payment histories, credit scores, and the like.

11       30.    Defendant COUNTRYWIDE derives a risk-based financing rate from

12   these objective factors, which Defendant COUNTRYWIDE and others in the

13   mortgage industry simply call the "par rate." (Defendant COUNTRYWIDE's

14   brokers and correspondent lenders can also estimate the par rates by referring to an

15   applicant's credit bureau-determined credit score.)

16       31.    Although Defendant COUNTRYWIDE's initial analysis applies

17   objective criteria to calculate this risk-related interest rate, Defendant

18   COUNTRYWIDE as a matter of policy and procedure authorizes its loan officers,

19   brokers and correspondent lenders to mark up that rate later, and also impose

20   additional non-risk-based charges including "yield spread" or "broker premiums",

21   and other discretionary fees. Defendant COUNTRYWIDE regularly

22   communicates applicable par rates, authorized yield spread premiums, and other

23   discretionary fees to its loan officers, brokers and correspondent lenders via "rate

24   sheets" and other communications.

25       32.    Defendant COUNTRYWIDE gives its loan officers, authorized

26   mortgage brokers and correspondent lenders discretion to impose yield spread

27   premiums and other subjective fees on borrowers. When borrowers pay yield

28   spread premiums, Defendant COUNTRYWIDE shares in additional income

CLASS ACTION COMPLAINT

1   generated by the premium because the yield spread premium-affected borrower is
2   locked into a higher interest rate going forward on their COUNTRYWIDE loan
3   than they would be if they had been placed in a par rate loan without a yield spread
4   premium.

5       33.    Defendant COUNTRYWIDE's borrowers pay yield spread premiums
6   and other discretionary fees that inflate their finance charges not knowing that a
7   portion of their finance charges are non-risk-related.

8       34.    Defendant COUNTRYWIDE's policies and procedures concerning
9   the assessment of yield spread premiums and other discretionary fees cause
10  persons with identical or similar credit scores to pay differing amounts for
11  obtaining credit. Such subjective loan pricing - which by design imposes differing
12  finance charges on persons with the same or similar credit profiles - disparately
13  impacts Defendant COUNTRYWIDE's minority borrowers.

14      35.    While Defendant COUNTRYWIDE's use of a common credit policy
15  for all loan applicants might appear to be racially neutral, Defendant
16  COUNTRYWIDE's use of yield spread premiums and other discretionary fees
17  disproportionately and adversely affects minorities (relative to similarly situated
18  non-minorities). Defendant COUNTRYWIDE's credit policy causes minorities to
19  pay disparately more discretionary finance charges than similarly situated non-
20  minorities. As the HMDA data cited herein indicates, minorities are substantially
21  more likely than similarly situated non-minorities to pay such charges.

22      36.    Defendant COUNTRYWIDE's credit policy is in fact intentionally
23  discriminatory. As described above, Defendant COUNTRYWIDE's credit pricing
24  policy by design discriminates against minority borrowers and directly causes this
25  disparate impact.

26  ///
27  ///
28  ///

- 9 -

CLASS ACTION COMPLAINT

## III. DEFENDANT COUNTRYWIDE IMPOSED DISCRIMINATORY FEES ON PLAINTIFFS

37.    Defendant COUNTRYWIDE's discriminatory credit pricing policy directly damaged Plaintiff. On or about February 27, 2006, Mr. Garcia obtained $415,000 in financing from COUNTRYWIDE to purchase a single-family home at 10045 Amherst Avenue, Montclair, California. The financing was arranged through Zeferino Parias dba ZF Lending, a Los Angeles-based mortgage firm which, on information and belief, has a "direct lending" relationship with COUNTRYWIDE.

38.    Mr. Garcia's financing consisted of two loans: a 30-year loan in the principal amount of $332,000, bearing interest at the rate of 6.55% and secured by a first deed of trust in favor of COUNTRYWIDE, and a 15-year loan in the principal amount of $83,000, bearing interest at the rate of 9.5% and secured by a second deed of trust in favor of "America's Wholesale Lender." The second mortgage includes a substantial balloon payment and significant prepayment penalties.

39.    The HUD Settlement Statement issued by the escrow agent and the loan Closing Instructions evidence that Garcia paid the following charges, among others, in connection with the transaction: ZF Lending received an $8,300 "broker origination fee," a $1,250 "broker administration fee," and a $550 "processing fee" from the borrower, as well as a "broker premium" (*i.e.*, a yield spread premium) of $830 (0.250%) paid by Countrywide. Countrywide also charged Mr. Garcia a $150 "loan tie in fee" and a $995 "underwriting fee." On information and belief, all of these fees were assessed pursuant to Defendant COUNTRYWIDE's credit pricing policies.

40.    ZF Lending and COUNTRYWIDE knew that Plaintiff was a minority borrower because, among other things, Spanish is Mr. Garcia's primary language, and the agent who filled out his application described him as "Latino or Hispanic."

- 10 -

1    41.    As a result of Defendant COUNTRYWIDE's discriminatory conduct,
2  Plaintiff received a loan on worse terms with higher costs than similarly situated
3  non-minority borrowers.

4                          **CLASS ACTION ALLEGATIONS**

5    42.    Plaintiff repeats and re-alleges each allegation above as if set forth
6  herein in full.

7    43.    This class action is brought pursuant to ECOA, the FHA and the Civil
8  Rights Act by Plaintiff on behalf of himself and all minority borrowers (the
9  "Class") who entered into residential mortgage loan contracts that were financed or
10  purchased by Defendant COUNTRYWIDE, and who were harmed by Defendants'
11  discriminatory conduct.

12    44.    Plaintiff sues on his own behalf, and on behalf of a class of persons
13  under Rule 23(a) and (b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure.

14    45.    Plaintiff does not know the exact size of the Class or identities of the
15  members of the Class, since that information is in the exclusive control of
16  Defendant COUNTRYWIDE. Plaintiff believes that the Class includes many
17  thousands, or tens of thousands of individuals, who are geographically dispersed
18  throughout the United States. Therefore, the Class is so numerous that joinder of
19  all members is impracticable.

20    46.    All members of the Class have been subjected to and affected by
21  Defendant COUNTRYWIDE's practice of assessing yield spread premiums and
22  other discretionary fees on mortgage loans. There are questions of law and fact that
23  are common to the Class, and that predominate over any questions affecting only
24  individual members of the Class. These questions include, but are not limited to the
25  following:

26          a.    the nature and scope of Defendant COUNTRYWIDE's policies
27                and procedures concerning the assessment of yield spread or
28

-11-

1

2                 broker premiums and other discretionary fees on mortgage
loans it funds;

3     b.    whether Defendant COUNTRYWIDE discriminated against

4                 Class Members by charging them higher interest, fees, and

5                 costs, than Defendant COUNTRYWIDE charges similarly

6                 situated non-minority borrowers;

7     c.    whether Defendant COUNTRYWIDE discriminated against

8                 Class Members by including prepayment penalties and other

9                 unfavorable terms in their loans, which were not generally

10                included in loans to similarly situated non-minority borrowers;

11     d.    whether Defendant COUNTRYWIDE's intent in its

12                discriminatory policies and procedures was racially motivated;

13     e.    whether Defendant COUNTRYWIDE can articulate any

14                legitimate non-discriminatory reason for its policies and

15                procedures;

16     f.    whether Defendant COUNTRYWIDE and its subsidiaries are

17                creditors under the ECOA because, in the ordinary course of

18                business, they participate in the decision of whether or not to

19                extend credit to consumers;

20     g.    whether Defendant COUNTRYWIDE's policies and

21                procedures regarding yield spread premiums and other

22                discretionary fees have a disparate impact on minority

23                borrowers;

24     h.    whether Defendant COUNTRYWIDE has any business

25                justification for its policies and procedures.

26     i.    whether there is a less discriminatory alternative to these

27                policies and procedures;

28

1        j.     whether Defendant COUNTRYWIDE devised and deployed a
2             scheme or common course of conduct that acted to deceive
3             Plaintiffs and members of the Class;

4        k.     whether the Court can enter declaratory and injunctive relief;
5             and

6        l.     the proper measure of disgorgement or monetary relief.

7      47.    Plaintiff's claims are typical of the claims of the Class, and do not

8 conflict with the interests of any other members of the Class in that both Plaintiff,

9 and the other members of the Class, were subjected to the same yield spread

10 premiums and other discretionary fees that have disproportionately affected

11 minority borrowers.

12     48.    Plaintiff will fairly and adequately represent the interests of the Class.

13 Plaintiff is committed to vigorous prosecution of the Class's claims, and he has

14 retained attorneys who have extensive experience in consumer protection and

15 credit discrimination actions and in class actions.

16     49.    Defendant COUNTRYWIDE has acted or refused to act on grounds

17 generally applicable to the Class, thereby making appropriate final injunctive relief

18 or corresponding declaratory relief with respect to the class as a whole.

19     50.    A class action is superior to other methods for the speedy and efficient

20 adjudication of this controversy. A class action regarding the issues in this case

21 does not create any problems of manageability.

22        **ACCRUAL, FRAUDULENT CONCEALMENT, CONTINUING**

23              **VIOLATION, AND EQUITABLE TOLLING**

24     51.    Plaintiff and Class Members did not know, and could not reasonably

25 have known, that they would receive from Defendant COUNTRYWIDE mortgage

26 loans with worse terms and higher costs and fees than non-minorities. Their

27 claims did not accrue until shortly before the filing of this action.

28

1      52.    Defendant COUNTRYWIDE's discriminatory conduct was inherently
2  self-concealing.  Defendant COUNTRYWIDE knew that Plaintiff and Class
3  Members could not determine the relationship between the terms, fees, and costs of
4  their loans to those available to non-minorities, or to the services that
5  COUNTRYWIDE and its contracted mortgage brokers provided.  Defendant
6  COUNTRYWIDE has superior knowledge about the terms, fees, and costs of its
7  loans, and knew that the terms, fees and costs provided to minorities, unbeknownst
8  to them, were substantially worse than the loans provided to non-minorities.

9      53.    Defendant COUNTRYWIDE has not released or provided
10  information about its discrimination against Plaintiff and Class Members, and has
11  actively and fraudulently concealed its discriminatory practices.

12      54.    As a result of the foregoing, Plaintiff and Class Members in the
13  exercise of due diligence could not have reasonably discovered the discriminatory
14  practices, and did not do so until just recently.  For the reasons alleged above, the
15  members of the Class still do not know that they have been and continue to be
16  injured by Defendant COUNTRYWIDE's discriminatory conduct.

17      55.    Defendant COUNTRYWIDE's discriminatory conduct is continuing
18  in nature, and Defendant COUNTRYWIDE has committed discriminatory acts
19  throughout the limitations period.  Class members whose loans include higher
20  interest rates due to COUNTRYWIDE's discrimination continue to be harmed
21  every time an interest payment becomes due on such loans.  Other Class members
22  have contracted with COUNTRYWIDE, and been subject to the identical
23  discriminatory practices, within the applicable period of limitations.

24      56.    There is a substantial nexus between the acts of discrimination
25  occurring within the limitation periods prior to filing suit, and the acts of
26  discrimination before that time.  The acts involve the same type of discrimination
27  and are recurring, not isolated events.

28

- 14 -

CLASS ACTION COMPLAINT

57.    Defendant COUNTRYWIDE specifically misled Plaintiff and Class Members into believing that the mortgage-related terms, fees, and costs they were offered were fair, reasonable, and the same as offered to non-minorities, and took steps to conceal its fraudulent and unfair conduct.

58.    The statute of limitations applicable to any claims that Plaintiff or other Class Members have brought or could bring as a result of the unlawful and fraudulent concealment and course of conduct described herein, have been tolled as a result of Defendant COUNTRYWIDE's fraudulent concealment. In addition, Plaintiff and the Class did not and could not have discovered their causes of action until the time alleged below, thereby tolling any applicable statute of limitations.

## COUNT I

## VIOLATION OF THE EQUAL CREDIT OPPORTUNITY ACT
## (15 U.S.C. §§ 1691 - 1691f)

59.    Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 58 above as if fully set forth herein.

60.    Defendant COUNTRYWIDE engages in credit transactions through its offering, granting, and purchasing of residential mortgage loans.

61.    By imposing higher interest rates, discretionary fees and penalties on residential mortgage loans to Plaintiff and Class Members than it imposed on non-minority mortgage borrowers, Defendant COUNTRYWIDE has discriminated against Plaintiff and members of the Class with respect to a credit transaction on the basis of race in violation of the ECOA. 15 U.S.C. § 1691(a).

62.    In addition, Defendant COUNTRYWIDE's pricing policies and procedures (including yield spread premiums), which provide financial incentives to its mortgage brokers and correspondent lenders to make subjective decisions to increase interest rates and charge additional fees and costs, have a disparate impact on Plaintiff and Class Members.

1    63.    As a proximate result of Defendant COUNTRYWIDE's violation of
2  15 U.S.C. § 1691, Plaintiff and members of the Class have been injured and are
3  entitled to injunctive and declaratory relief and damages, or make whole equitable
4  relief.

5    64.    In addition, Defendant COUNTRYWIDE's conduct as alleged herein
6  was intentional, willful, wanton, reckless, malicious, outrageous, or otherwise
7  aggravated beyond mere negligence.  Defendant COUNTRYWIDE acted with
8  malice and reckless indifference to the federally protected rights of Plaintiff and
9  members of the Class.  As a result, Plaintiffs and members of the Class are entitled
10  to punitive damages.

11    65.    Moreover, Defendant COUNTRYWIDE continues to discriminate in
12  violation of the ECOA against Class Members every time Defendant
13  COUNTRYWIDE provides a home mortgage loan as described herein.  If not
14  enjoined from such violation by the Court, Defendant COUNTRYWIDE will
15  continue to engage in conduct that disregards the rights of Plaintiff and members of
16  the Class, and cause Plaintiff and members of the Class irreparable injury for
17  which there is no adequate remedy at law.  15 U.S.C. § 1691(e).  Plaintiff and
18  members of the Class ask this Court to declare the rights of the parties herein
19  regarding Defendant COUNTRYWIDE's obligation to participate in credit
20  transactions without discriminating against applicants for credit on the basis of the
21  applicants' race.

22                        **COUNT II**
23                 **RACIAL DISCRIMINATION**
24                   **(42 U.S.C. § 1981)**

25    66.    Plaintiff repeats, re-alleges, and incorporates the allegations contained
26  in paragraphs 1 through 58 above as if fully set forth herein.

27    67.    Defendant COUNTRYWIDE intentionally discriminated against
28  Plaintiff and Class Members by charging them higher interest rates, fees and costs

- 16 -

1  than were charged to similarly situated non-minority borrowers, and imposing
2  higher and less favorable prepayment and other penalties on them than were
3  imposed on similarly situated non-minority borrowers.

4      68.    Defendant COUNTRYWIDE unlawfully discriminated against
5  Plaintiff and Class Members in (i) formation of contracts, (ii) making,
6  performance, modification, and termination of contracts, (iii) the enjoyment of all
7  benefits, privileges, terms and conditions of the contractual relationship, and/or (iv)
8  conduct that interferes with the right to establish and enforce contract obligations.

9      69.    Defendant COUNTRYWIDE's actions violate 42 U.S.C. § 1981, as
10  well as the rights of Plaintiff and the Class under the Fifth, Thirteenth, and
11  Fourteenth Amendments to the Constitution of the United States.

12      70.    Plaintiff and Class Members are entitled to injunctive and declaratory
13  relief and damages, or make whole equitable relief as a result of Defendant
14  COUNTRYWIDE's discriminatory conduct.

15      71.    At no time has Defendant COUNTRYWIDE undertaken corrective
16  action to ameliorate its racially discriminatory practices. Defendant
17  COUNTRYWIDE continues to reap the profits of its discriminatory practices and
18  continues to discriminate. Defendant COUNTRYWIDE's conduct as alleged
19  herein was intentional, willful, wanton, reckless, malicious, outrageous, or
20  otherwise aggravated beyond mere negligence. Defendant COUNTRYWIDE has
21  acted with malice and reckless indifference to the federally protected rights of
22  Plaintiff and members of the Class. As a result, Plaintiff and members of the Class
23  are entitled to punitive damages.

24  ## COUNT III

25  ## RACIAL DISCRIMINATION

26  ### (42 U.S.C. § 1982)

27      72.    Plaintiff repeats, re-alleges, and incorporates the allegations contained
28  in paragraphs 1 through 58 above as if fully set forth herein.

- 17 -

1    73.   Section 42 U.S.C. §1982 provides that all citizens of the United States
2  "shall have the same right, in every State and Territory, as is enjoyed by White
3  citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal
4  property."

5    74.   Defendant COUNTRYWIDE has discriminated against Plaintiff and
6  the Class with respect to their home mortgage loans by charging Plaintiff and the
7  Class higher interest rates and other discretionary fees, and imposing higher
8  penalties on them, than Defendant COUNTRYWIDE has charged and imposed on
9  similarly situated non-minority consumers. As a result of Defendant
10 COUNTRYWIDE's conduct, Plaintiff and the Class have not had the same right as
11 Caucasians to inherit, purchase, sell, hold, and convey real property. Defendant
12 COUNTRYWIDE has thereby violated 42 U.S.C. § 1982.

13   75.   Defendant COUNTRYWIDE's violation of 42 U.S.C. § 1982 was
14 intentional and malicious.

15   76.   As a proximate result of Defendant COUNTRYWIDE's violation of
16 42 U.S.C. § 1982, Plaintiff and members of the Class have been injured, and are
17 entitled to injunctive and declaratory relief and damages, or make whole equitable
18 relief. In addition, Defendant COUNTRYWIDE's conduct as alleged herein was
19 intentional, willful, wanton, reckless, malicious, outrageous, or otherwise
20 aggravated beyond mere negligence. Defendant COUNTRYWIDE acted with
21 malice and reckless indifference to the federally protected rights of Plaintiff and
22 members of the Class. As a result, Plaintiff and members of the Class are entitled
23 to punitive damages.

24                        **COUNT IV**

25              **VIOLATION OF THE FAIR HOUSING ACT**

26                  **(42 U.S.C. §§ 3601 – 3619)**

27   77.   Plaintiff repeats, re-alleges and incorporates the allegations in
28 paragraphs 1 through 58 above as if fully set forth herein.

- 18 -

CLASS ACTION COMPLAINT

78.    Mortgage lending and the providing of residential mortgage loans is a "residential real estate-related transaction" within the meaning of the FHA. 42 U.S.C. § 3605(b).

79.    By imposing higher interest rates and other discretionary fees and less favorable terms on residential mortgage loans to Plaintiff and Class Members than it imposed on non-minority mortgage borrowers, Defendant COUNTRYWIDE has discriminated against Plaintiff and members of the Class concerning their ability to participate in real estate-related transactions, and in the terms and conditions of such transactions, in violation of the FHA. 42 U.S.C. § 3605(a).

80.    In addition, Defendant COUNTRYWIDE's pricing policies and procedures (including yield spread premiums), which provide financial incentives to its mortgage brokers and correspondent lenders to make subjective decisions to increase interest rates and charge additional fees and costs, had a disparate impact upon Plaintiffs and Class Members.

81.    As a proximate result of Defendant COUNTRYWIDE's violation of 42 U.S.C. § 3605, Plaintiff and members of the Class have been injured and are entitled to injunctive and declaratory relief and damages, or make whole equitable relief.

82.    In addition, Defendant COUNTRYWIDE's conduct as alleged herein was intentional, willful, wanton, reckless, malicious, outrageous, or otherwise aggravated beyond mere negligence. Defendant COUNTRYWIDE acted with malice and reckless indifference to the federally protected rights of Plaintiff and members of the Class. As a result, Plaintiffs and members of the Class are entitled to punitive damages.

83.    Moreover, Defendant COUNTRYWIDE continues to discriminate in violation of the FHA against members of the Class every time Defendant COUNTRYWIDE provides a home mortgage loan as described herein. If not enjoined from such violation by the Court, Defendant COUNTRYWIDE will

- 19 -

1  continue to engage in conduct that disregards the rights of Plaintiff and members of

2  the Class, and cause Plaintiff and members of the Class irreparable injury for

3  which there is no adequate remedy at law.  42 U.S.C. § 3613(c).

4      84.     Plaintiff and members of the Class ask this Court to declare the rights

5  of the parties herein regarding Defendant COUNTRYWIDE's obligation to

6  participate in credit transactions without discriminating against applicants for

7  credit on the basis of the applicants' race.

8                        **PRAYER FOR RELIEF**

9      WHEREFORE PREMISES CONSIDERED, Plaintiff requests the following

10  relief:

11      A.     An order determining that the action is a proper class action pursuant

12  to Rule 23 of the Federal Rules of Civil Procedure;

13      B.     A judgment awarding Plaintiff and Class Members costs and

14  disbursements incurred in connection with this action, including reasonable

15  attorneys' fees, expert witness fees and other costs;

16      C.     A judgment granting extraordinary equitable and/or injunctive relief

17  as permitted by law or equity, including rescission, restitution, reformation,

18  attaching, impounding, or imposing a constructive trust upon, or otherwise

19  restricting, the proceeds of Defendant's ill-gotten funds to ensure that Plaintiff and

20  Class Members have an effective remedy;

21      D.     A judgment awarding Plaintiff and Class Members compensatory

22  damages according to proof;

23      E.     A judgment awarding punitive damages to Plaintiff and Class

24  Members;

25      F.     A judgment granting declaratory and injunctive relief and all relief

26  that flows from such injunctive and declaratory relief; and

27

28

                            - 20 -

                                        **CLASS ACTION COMPLAINT**

1    G.    A judgment or other order granting such other and further relief as the
2    Court deems just and proper including, but not limited to, recessionary relief and
3    reformation.

4        DATED this __ day of September, 2007.

5
6                                    BONNETT, FAIRBOURN,
                                     FRIEDMAN, & BALINT, P.C.
7
                                     CHAVEZ & GERTLER, L.L.P.
8.

9

10                                   By: _____
11                                       Nance F. Becker

12                                   Attorneys for Plaintiff

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **JURY TRIAL DEMANDED**

2  Plaintiffs demand a trial by jury on all issues so triable.

3

4  DATED this ___ day of September, 2007.

5  BONNETT, FAIRBOURN,
6  FRIEDMAN, & BALINT, P.C.

7  CHAVEZ & GERTLER, L.L.P.

8

9  By: _____
10  Nance F. Becker

11  Attorneys for Plaintiff

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CLASS ACTION COMPLAINT**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SONIA JENKINS, | ) | FILED: MAY 21, 2008 |
| | ) | 08CV2935        TC |
| on behalf of herself and | ) | JUDGE COAR |
| the classes defined herein, | ) | MAGISTRATE JUDGE KEYS |
| | ) | |
| plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| COUNTRYWIDE HOME LOANS, INC., | ) | |
| d/b/a AMERICA'S WHOLESALE LENDER, | ) | |
| | ) | JURY DEMANDED |
| defendant. | ) | |

## COMPLAINT

Plaintiff Sonia Jenkins ("Ms. Jenkins") by her undersigned attorney, alleges as follows:

1.     This is an action brought by Ms. Jenkins, an individual, against Countrywide Home Loans, Inc. d/b/a America's Wholesale Lender ("Countrywide") under the Equal Credit Opportunity Act, 15 U.S.C. § 1691, et seq. ("ECOA") and the Fair Housing Act, 42 U.S.C. § 3601 et seq. Ms. Jenkins seeks remedies for the discriminatory effects of Countrywide's home financing policies and practices.

2.     As described below, Countrywide has established a specific, identifiable and uniform credit pricing system, a component of which, referred to herein as the Discretionary Pricing Policy, authorizes unchecked, subjective surcharge of additional points and fees to an otherwise objective risk-based financing rate. In other words, after a finance rate acceptable to Countrywide is determined by objective criteria (e.g., the individual's credit history, credit score, debt-to-income ratio and loan-to-value ratios), Countrywide's credit pricing policy authorizes

1

additional discretionary finance charges. These subjective, additional finance charges had a discriminatory impact on Ms. Jenkins, in violation of ECOA and the FHA.

3.    Countrywide has established policies for retail and wholesale access to its loan products that subjected Ms. Jenkins to a significantly higher likelihood of exposure to discretionary points, fees and interest mark-ups. These costs drove up the cost of Ms. Jenkins' mortgage loan.

4.    Ms. Jenkins seeks damages, declaratory and injunctive relief, disgorgement and restitution of monies.

## JURISDICTION AND VENUE

5.    Ms. Jenkins invokes the jurisdiction of this Court pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court in a civil action arising under federal law.

6.    Venue is proper in this Court pursuant to 28 U.S.C. 1391(b) inasmuch as Countrywide regularly conducts business in this District, and Ms. Jenkins resides in this district.

## PARTIES

7.    Plaintiff, Ms. Jenkins, is an African-American homeowner who resides at 8640 S. Kenwood Avenue, Chicago, Illinois 60619.

8.    Defendant, Countrywide Home Loans, Inc. ("Countrywide Home Loans") is a mortgage lender with a principal place of business at 4500 Park Granada Blvd., Calabasas, California, 91302. Countrywide Home Loans does business throughout the U.S., including in Illinois. Its registered agent name and address are Prentice Hall Corporation, 33 North LaSalle Street, Chicago, IL 60602.

2

### FACTS

**A.    MORTGAGE LENDING IN THE UNITED STATES HISTORICALLY HAS DISCRIMINATED AGAINST MINORITIES LIKE MS. JENKINS**

9.     According to a study by the Joint Center for Housing Studies at Harvard University, mortgage lending discrimination today is subtle but pervasive, with minority consumers continuing to have less-than-equal access to loans at the best price and on the best terms that their credit history, income, and other individual financial considerations merit more than three decades after the enactment of national fair lending legislation.  William C. Apgar & Allegra Calder, *The Dual Mortgage Market:  The Persistence of Discrimination in Mortgage Lending*, Joint Center for Housing Studies of Harvard University, December 2005, *available at* www.jchs.harvard.edu/publications/finance/w05-11.pdf.

10.     The passage of civil rights legislation and fair lending laws in the 1960s and 1970s brought an end to the most virulent forms of overt racial discrimination in the housing markets, but throughout the 1980s and 1990s, mortgage lenders found more subtle ways to discriminate, including maintaining offices only in white neighborhoods and engaging in practices such as redlining (refusing to lend on properties in predominantly minority neighborhoods).

11.     After such redlining practices were challenged in the 1990s, mortgage lenders changed tactics once again, making loans to minorities, but charging higher interest rates and loan-related fees than they charged to similarly-situated white borrowers.  Loan data that mortgage lenders must now compile and disclose under the federal Home Mortgage Disclosure Act ("HMDA") reveals profound loan pricing disparities between minority borrowers and similarly-situated white borrowers.

3

12.     HMDA requires mortgage lenders to report information about the home loans they process each year. In 2005, lenders reported information on more than 30 million home loan applications pursuant to HMDA. In 1989, Congress required lenders to begin disclosing information about mortgage borrowers' race and ethnicity. In 2004, concerned with potential racial discrimination in loan pricing and recognizing that racial or other types of discrimination can occur when loan officers and mortgage brokers have latitude in setting interest rates, the Federal Reserve Board began requiring lenders to also report information concerning rates, points, and fees, charged to borrowers on high-cost loans.

13.     According to the Federal Reserve, both 2004 and 2005 HMDA data revealed that "Blacks and minority borrowers were more likely . . . to have received higher-priced loans than non-minority whites. . . . [which has] increased concern about the fairness of the lending process." Robert B. Avery, Kenneth P. Brevoort & Glenn B. Canner, *Higher-Priced Home Lending and the 2005 HMDA Data,* 2006 Federal Reserve Bulletin, A124, A159 (revised Sept. 18, 2006), *available at* http://www.federalreserve.gov/pubs/bulletin/2006/hmda/bull06hmda.pdf.

14.     HMDA data for 2004 reveals profound loan pricing disparities between minority borrowers and non-minority whites even after controlling for borrowers' gender, income, property location, and loan amount. After accounting for those differences in the 2004 HMDA data, minority borrowers were still almost twice as likely to receive a higher-rate home loan as non-minority whites. *Testimony of Keith Ernst before the Subcommittee on Financial Institutions and Consumer Credit*, June 13, 2006 at 3, *available at* http://www.responsiblelending.org/pdfs/Testimony-Ernst061306.pdf. In an October 2006 speech, the Vice-Chairman of the Federal Deposit Insurance Corporation, Martin Gruenberg, noted that 2004 HMDA data "clearly indicated" that minority borrowers are more likely to

receive high-cost home loans than are non-minority whites. Martin J. Gruenberg, FDIC Vice-Chairman, Address to the Conference on Hispanic Immigration to the United States: Banking the Unbanked Initiatives in the U.S. (Oct. 18, 2006) *available at* http://www.fdic.gov/news/news/speeches/archives/2006/chairman/spoct1806.html.

15.    Likewise, HMDA data for 2005 shows that "for conventional home-purchase loans, the gross mean incidence of higher-priced lending was 54.7 percent for blacks and 17.2 percent for non-minority whites, a difference of 37.5 percentage points." Avery et al., *supra*, at A159. The situation is similar for refinancing, where there is a difference of 28.3 percentage points between blacks and non-minority whites. *Id.* at A124, A159.

16.    A growing number of research studies and investigations show that significant racial disparities still exist in lending practices. *See, e.g.,* California Reinvestment Coalition, et al., *Paying More for the American Dream: A Multi-State Analysis of Higher Cost Home Purchase Lending,* (March 2007) *available at* http://www.nedap.org/pressroom/documents/2007_Report-2005_HMDA.pdf, (hereinafter "2007 CRC Report"); Stephen L. Ross, *The Continuing Practice and Impact of Discrimination,* (Revised July 2006) (Univ. of Connecticut, Working Paper 2005-19R), *available at* http://www.econ.uconn.edu/working/2005-19r.pdf.

17.    Recently, the California Reinvestment Coalition, jointly with several other non-profit and housing advocacy groups, published another report. The organizations examined the impact of lending by subprime, lenders in 7 metropolitan areas – Boston, Charlotte, Chicago, Cleveland, Los Angeles, New York City and Rochester, NY. California Reinvestment Coalition, et al., *Paying More for the American Dream: The Subprime Shakeout and its Impact on Lower-Income and Minority Communities,* (March 2008), *available at*

5

http://www.nedap.org/documents/MultistateHMDAreport-Final21.pdf, (hereinafter "2008 CRC Report").

18.    Among other things, the study showed that subprime lenders are concentrated in minority neighborhoods. Data supporting this finding demonstrated that subprime lenders had 20% of the market share in predominantly minority neighborhoods in the metro areas studied, compared to a 4% market share in predominantly white neighborhoods. *See* 2008 CRC Report at 5. In addition, over 40% of the loans made by subprime lenders were in neighborhoods where 80% or more of the residents were minorities. *Id.* In stark contrast, less than 10% of subprime lender loans were in areas where less than 10% of the residents were minorities. *Id.*

19.    In metro Chicago, where Ms. Jenkins resides, the same study shows that subprime lenders had 20.5% of the home loan market in neighborhoods where more than 80% of the residents were minorities, while subprime lenders had only 5.6% of the market for home loans in neighborhoods where less than 10% of the residents were minorities. 2008 CRC Report at 17.

20.    The Association of Community Organizations for Reform Now (ACORN) released a report in 2005, finding that "[i]n every metropolitan area where at least 50 refinances were made to African-American homeowners, African-Americans were more likely to receive a high-cost loan than White homeowners." ACORN Fair Housing, *The High Cost of Credit: Disparities in High-priced Refinanced Loans to Minority Homeowners in 125 American Cities*, September 27, 2005, at 11, *available at* http://www.acorn.org/fileadmin/Afforable_Housing/hmda/High_Cost_of_Credit_Report.doc.

21.    Moreover, and importantly, research studies have suggested that borrowers' credit profiles cannot fully explain why some borrowers, and not others, are saddled with higher cost loans. Researchers have raised "doubts that risk can adequately explain racial differences" in

6

high-cost loans. Calvin Bradford, Center for Community Change, *Risk or Race? Racial*

*Disparities and the Subprime Refinance Market,* (May 2002), *available at*

http://www.knowledgeplex.org/kp/report/report/relfiles/ccc_0729_risk.pdf. In other words,

evidence "suggests that weak borrower credit profiles do not fully explain why some borrowers

get stuck with higher-cost home loans." 2007 CRC Report, *supra* at 7.

**B.    COUNTRYWIDE'S DISCRETIONARY PRICING POLICY CONTINUES THE
PERVASIVE DISCRIMINATION AGAINST MINORITIES IN MORTGAGE
LENDING**

22.    Countrywide is one of the largest mortgage-lending companies in the United

States. Countrywide recently was examined in a study conducted by the California Reinvestment

Coalition, Community Reinvestment Association of North Carolina, Empire Justice Center,

Massachusetts Affordable Housing Alliance, Neighborhood Economic Development Advocacy

Project, and the Woodstock Institute in March of 2007 ("2007 Joint Report").[1] The study

discussed higher cost home purchase lending in six metropolitan areas, (including Chicago,

where Ms. Jenkins resides) during 2005 and found significant disparities made to minority and

white borrowers.

23.    The 2007 Joint Report included specific Countrywide data relating to disparities.

It showed that on average in the six metropolitan areas, blacks are almost 5 times more likely to

receive a high APR Countrywide purchase money loan than whites. *Id.* p. 10. (Table 2). In

Chicago specifically, blacks are almost 5.6 times more likely to receive a high APR Countrywide

purchase money loan than whites. *Id.*

24.    Based on the latest available Home Mortgage Disclosure Act ("HMDA") data,

available from the Department of Housing and Urban Development, blacks who borrower from

---

[1] Income Is No Shield Against Racial Differences In Lending," available at http://ncrc.org.

Countrywide are over three times more likely than whites to have received a high-APR loan to purchase a home and over two times more likely to have received a high-APR loan to refinance their home.

25. In December 2006, Countrywide agreed to settle regulatory allegations in New York State that its practices result in discrimination against minority borrowers. *See*, Press Release, Office of the New York Attorney General, "Countrywide Agrees To New Measures To Combat Racial And Ethnic Disparities In Mortgage Loan Pricing" (Dec. 5, 2006), available at http://www.oag.state.ny.us/press/2006/dec/dec05a 06.html.

26. Countrywide publicly promotes its home financing expertise by means of nationwide advertising campaigns. In its advertisements, Countrywide solicits persons to apply for financing with Countrywide either in one of its offices or through one of the mortgage brokers who Countrywide has authorized to accept applications on its behalf.

27. Countrywide makes home-mortgage loans directly to consumers through its various subsidiaries.

28. Countrywide also makes home-mortgage loans that are arranged by its network of mortgage brokers. Brokers make these loans in reliance on Countrywide's credit-granting policies and with Countrywide's participation.

29. Countrywide's policies as to where to place its offices and how to market its products show that it was targeting minority borrowers like Ms. Jenkins for subprime loans.

30. Countrywide's loans are priced based on its internal policies.

31. Countrywide participated in determining the terms of credit available to Ms. Jenkins including, without limitation, by targeting Ms. Jenkins and by making the Discretionary Pricing Policy applicable to its loans.

32.     Countrywide's Discretionary Pricing Policy was unrelated to Ms. Jenkins' objective credit characteristics such as credit history, credit score, debt-to-income ratio and loan-to-value ratios and results in purely subjective charges that affected the rate otherwise available to Ms. Jenkins.

33.     Countrywide provided its mortgage brokers with substantial information about its loan programs, rates and credit criteria, as well as its policies for compensation.

34.     Countrywide's network of mortgage brokers accepted applications, quoted financing rates and terms (within the limitations set by Countrywide), informed credit applicants of Countrywide's financing options and originated finance transactions using Countrywide's forms, in accordance with Countrywide's policies.

35.     Countrywide provided its mortgage brokers with credit applications, loan contracts and other required financing forms, as well as instructions on filling out those documents necessary to complete home mortgage transactions.

36.     After Ms. Jenkins provided credit information to one of Countrywide's mortgage brokers, Countrywide computed a financing rate through an objective credit analysis that, in general, discerned the creditworthiness of Ms. Jenkins.

37.     Countrywide's credit analyses considered numerous risk-related variables of creditworthiness, including credit bureau histories, payment amounts, debt ratio, bankruptcies, automobile repossessions, charge-offs, prior foreclosures, payment histories, credit score, debt-to-income ratios, loan-to-value ratios and other risk-related attributes or variables.  On information and belief, Countrywide and/or its mortgage brokers used these variables to determine a "mortgage score" for Ms. Jenkins.

9

38.     Based on these objective risk-related variables and the resulting mortgage score, Countrywide and/or its mortgage brokers derived a risk-based financing rate at which it would provide a home mortgage, often called the "Par Rate." Alternatively, experienced Countrywide employees and/or Countrywide's mortgage brokers estimated the risk-related Par Rate by referring to Ms. Jenkins' credit bureau determined credit score.

39.     Although Countrywide's initial analysis applied objective criteria to calculate this risk-related Par Rate, Countrywide then authorized a subjective component in its credit pricing system —the Discretionary Pricing Policy — to impose additional non-risk charges.  On information and belief, the applicable Par Rates and authorized discretionary charges were communicated by Countrywide to its mortgage brokers via regularly published "rate sheets."

40.     Ms. Jenkins paid the discretionary charges as a component of the total finance charge (the "Contract APR"), without knowing that a portion of her contract APR was a non-risk-related charge.

41.     Countrywide's mortgage brokers had discretion, within the limits set by Countrywide, to impose discretionary mark-ups as additional points in interest – "a rate mark-up", or as points and fees on the loan.  When there was a rate mark-up, such as on Ms. Jenkins' loan, Countrywide received additional income.

42.     On information and belief, Countrywide's mortgage brokers received compensation based, in part, on the amount of discretionary charges added to Ms. Jenkins' loan. This compensation scheme served as an incentive for mortgage brokers to mark-up Ms. Jenkins' loan.

43.     Countrywide's Discretionary Pricing Policy, by design, caused Ms. Jenkins to pay a different amount for the cost of credit than white borrowers with identical or similar credit

scores. As a result of using a subjective pricing component that is designed to charge persons with the same credit profiles different amounts of finance charge, the objective qualities of the initial credit analysis used to calculate the Par Rate are undermined and the potential for race bias became inherent in the transaction.

44.    The Discretionary Pricing Policy, although facially neutral (insofar as the Countrywide uses the same or effectively the same policy for all credit applicants), had a disproportionately adverse effect on Ms. Jenkins compared to similarly situated whites in that Ms. Jenkins paid disparately more discretionary charges (both in frequency and amount) than whites with similar credit qualifications. Statistical analyses of discretionary charges imposed on minority and white customers of mortgage companies that use credit pricing systems structured like Countrywide's have revealed that minorities like Ms. Jenkins, after controlling for credit risk, are substantially more likely than similarly situated whites to pay such charges.

45.    The Discretionary Pricing Policy constitutes a pattern and practice that had an ongoing effect of discrimination against minority homeowners like Ms. Jenkins by way of disparate impact. The pattern and practice continues.

46.    Mortgage brokers are Countrywide's agents for the purpose of setting credit price, which always was set based on the Countrywide's policy.

47.    The disparate impact Ms. Jenkins suffered is a direct result of Countrywide's Discretionary Pricing Policy in that the Countrywide designed, disseminated, controlled, implemented and profited from the Discretionary Pricing Policy creating the disparate impact.

48.    Countrywide has a non-delegable duty to ensure that its mortgage financing structure and policies do not have a disparate impact on legally protected classes, such as blacks. Despite having such a non-delegable duty, Countrywide chose to use a commission-driven,

11

subjective pricing policy that it knew or should have known had a significant and pervasive adverse impact on Ms. Jenkins.

49.     The disparities between the terms of Countrywide's transaction involving Ms. Jenkins and the terms involving whites borrowers with similar credit qualifications cannot be a product of chance and cannot be explained by factors unrelated to race, but, instead, are the direct causal result of the use of the discriminatory Discretionary Pricing Policy.

50.     There are no legitimate business reasons justifying Countrywide's discriminatory Discretionary Pricing Policy that could not be achieved by a policy that has no discriminatory impact or a greatly reduced discriminatory impact.

## C.     THE DEFENDANTS' DISCRETIONARY PRICING POLICY DISCRIMINATED AGAINST MS. JENKINS

51.     Ms. Jenkins is black homeowner who resides at 8640 S. Kenwood Avenue, Chicago, Illinois 60619.

52.     On or about April 20, 2007, Ms. Jenkins entered into a mortgage loan transaction with Countrywide. The principal amount of the loan was in the amount of $154,00.00 (Loan # 167628984).

53.     Barrister Mortgage brokered the loan.

54.     The loan was a "2 Yr Hybrid LIBOR" adjustable rate mortgage with an initial introductory period of 2 years. The interest rate during the introductory period was 8.850%, subject to change every 6 months after the introductory period. After factoring the associated costs of the loan, the Annual Percentage Rate was 10.688%.

55.     As part of the refinance, Ms. Jenkins paid various Settlement Charges, amounting to $8,870.00. These fees included a $3,750.00 "Broker Origination Fee" to Barrister Mortgage, a

12

$500.00 "Broker Processing Fee" to Barrister Mortgage, a $500.00 "Administration Fee" to Barrister Mortgage, and a $695.00 underwriting fee to Countrywide.

56.     In connection with the loan, Countrywide also paid Barrister Mortgage a yield spread premium in the amount of $1,540.00 representing additional commission based on a marked up rate.

57.     True and correct copies of Truth-in-Lending disclosure and HUD-One Settlement Statement provided in connection with Ms. Jenkins' loan are attached hereto and labeled Exhibit 1 and Exhibit 2, respectively.

58.     On information and belief, unbeknownst to Ms. Jenkins, the contract APR on the mortgage loan was actually a combination of an objective, risk-based calculation and a totally subjective, discretionary component added pursuant to the Countrywide's Discretionary Pricing Policy.

59.     Countrywide did not offer Ms. Jenkins its less expensive loan products that were available to borrowers with similar credit characteristics.

60.     On information and belief, Ms. Jenkins was subject to the Countrywide's Discretionary Pricing Policy.

61.     On information and belief, Countrywide charged Ms. Jenkins a disproportionately greater amount in non-risk-related credit charges than it charges similarly situated white persons.

## COUNT I
## DISCRIMINATION IN VIOLATION OF THE EQUAL CREDIT OPPORTUNITY ACT

62.     Ms. Jenkins repeats and re-alleges every allegation above as if set forth herein in full.

13

63.     Countrywide is a creditor as defined in ECOA, and in the ordinary course of its business, participated in the decision of whether or not to extend credit to Ms. Jenkins.

64.     Countrywide designed, disseminated, controlled, implemented and profited from the discriminatory policy and practice alleged herein — the Discretionary Pricing Policy — which has had a disparate economic impact on Ms. Jenkins compared to similarly situated whites.

65.     All actions taken by Countrywide's employees and agents were in accordance with the specific authority granted to them by Countrywide and were in furtherance of the Countrywide's policies and practices.

66.     As a result of the Countrywide's Discretionary Pricing Policy, Countrywide has collected more in finance charges from Ms. Jenkins than from similarly situated white persons, for reasons unrelated to credit risk.

67.     Countrywide's Discretionary Pricing Policy violates the Equal Credit Opportunity Act.

68.     Ms. Jenkins is an aggrieved person as defined in ECOA by virtue of having been subject to the Countrywide's discriminatory Discretionary Pricing Policy.

## COUNT II
## DISCRIMINATION IN VIOLATION OF THE FAIR HOUSING ACT

69.     Ms. Jenkins repeats and re-alleges every allegation above as if set forth herein in full.

70.     Countrywide engaged in a residential real estate-related transaction with Ms. Jenkins.

14

71.    Countrywide's Discretionary Pricing Policy has resulted in discrimination with respect to the Ms. Jenkins.

72.    As a result of the Countrywide's Discretionary Pricing Policy, Countrywide has collected more in finance charges from Ms. Jenkins than from similarly situated white persons, for reasons unrelated to credit risk.

73.    Countrywide's Discretionary Pricing Policy violates the Fair Housing Act and constitutes actionable discrimination on the basis of race.

74.    Ms. Jenkins is an aggrieved person as defined in FHA by virtue of having been subject to the Countrywide's discriminatory, Discretionary Pricing Policy.

## PRAYER FOR RELIEF

WHEREFORE, Ms. Jenkins respectfully requests the following relief:

a.    Enter a judgment, pursuant to 15 U.S.C. §1691e(c) and/or 42 U.S.C. §3613, declaring the acts and practices of Countrywide complained of herein to be in violation of ECOA and the FHA;

b.    Grant a permanent or final injunction, pursuant to 15 U.S.C. 1691e(c) and/or 42 U.S.C. §3613(c), enjoining Countrywide, and Countrywide's agents and employees, affiliates and subsidiaries, from continuing to discriminate against Ms. Jenkins because of her race through further use of the Discretionary Pricing Policy or any other non-risk-related discretionary pricing policy employed by Countrywide;

c.    Order Countrywide, pursuant to 15 U.S.C. §1691e(c) and/or 42 U.S.C. §3613(c), to adopt and enforce a policy that requires appropriate training of the Countrywide's employees and its brokers and agents to prevent discrimination;

      d.    Order disgorgement, pursuant to 15 U.S.C. §1691e(c), of all disproportionate non-risk charges imposed on Ms. Jenkins by Countrywide's Discretionary Pricing Policy; and order the equitable distribution of such charges to Ms. Jenkins; together with other relief for unjust enrichment;

      e.    Order actual and punitive damages and/or restitution to Ms. Jenkins pursuant to 42 U.S.C. § 3613(c);

      f.    Award Ms. Jenkins the costs of this action, including the fees and costs of experts, together with reasonable attorneys' fees, pursuant to 15 U.S.C. § 1691e(d) and/or 42 U.S.C. § 3613(c); and

      g.    Grant Ms. Jenkins such other and further relief as this Court finds necessary and proper.

## JURY TRIAL DEMANDED

Ms. Jenkins respectfully demands a trial by jury on all issues so triable.

Respectfully submitted
on behalf of Ms. Jenkins,

_s/Al Hofeld, Jr._
Al Hofeld, Jr.
LAW OFFICES OF AL HOFELD, JR., LLC
AND THE SOCIAL JUSTICE PROJECT, INC.
208 S. LaSalle Street, Suite #1650
Chicago, IL 60604
Phone (312) 345-1004
Fax (312) 346-3242

Dated: May 21, 2008

16

Case 1:08-cv-02935   Document 1-2   Filed 05/21/2008   Page 1 of 7

08CV2935          TC
JUDGE COAR
MAGISTRATE JUDGE KEYS

# EXHIBIT 1

**TRUTH IN LENDING DISCLOSURE STATEMENT**
**(THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)**

LENDER: Countrywide Home Loans, Inc. dba America's Wholesale Lender

4500 Park Granada
Calabasas, CA 91302-1613

☐ Preliminary  ☒ Final
DATE 04/20/2007

BORROWERS: SONIA JENKINS

LOAN 167628984
CASE NO.
Type of Loan  SUBPRIME - B/C
2 Yr Hybrid LIBOR

ADDRESS: 8640 S KENWOOD AVE
CITY STATE / ZIP: CHICAGO, IL 60619-6416
PROPERTY: 8640 S KENWOOD AVE
CHICAGO, IL 60619-6416

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 10.688 % | $ 509,169.38 | $ 148,034.96 | $ 657,203.54 |

PAYMENT SCHEDULE:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | WHEN PAYMENTS ARE DUE |
|---|---|---|
| 24 | 1,170.14 | MONTHLY BEGINNING 06/01/2007 |
| 6 | 1,335.35 | MONTHLY BEGINNING 06/01/2009 |
| 169 | 1,380.21 | MONTHLY BEGINNING 12/01/2009 |
| 1 | 1,393.79 | LAST PAYMENT DUE 05/01/2037 |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

**DEMAND FEATURE:** ☒ This loan does not have a Demand Feature.  ☐ This loan has a Demand Feature as follows:

**VARIABLE RATE FEATURE:**
☒ This loan has a Variable Rate Feature. Variable Rate disclosures have been provided to you earlier

SECURITY: You are giving a security interest in the property located at
8640 S KENWOOD AVE, CHICAGO, IL 60619-6416

ASSUMPTION: Someone buying this property  ☒ cannot assume the remaining balance due under original mortgage terms.
☐ may assume, subject to lender's conditions, the remaining balance due under original mortgage terms.

PROPERTY INSURANCE: Hazard Insurance, including flood insurance if the property is in a Special Flood Hazard Area, is required as a condition of this loan. You may obtain the insurance coverage from any insurance company acceptable to the lender. Complete details concerning insurance requirements will be provided prior to loan closing.

LATE CHARGES: If your payment is more than 15 days late, you will be charged a late charge of 5.000%
of the overdue payment.

PREPAYMENT: If you pay off your loan early, you
☐ may  ☒ will not · be entitled to a refund of part of the finance charge.
☐ may  ☒ will not · have to pay a penalty.

See your contract documents for any additional information regarding non-payment, default, required repayment in full before scheduled date, and prepayment refunds and penalties.
"e" means an estimate

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

| | | | |
|---|---|---|---|
| BORROWER SONIA JENKINS | 4/20/07 DATE | BORROWER | DATE |
| | | | |
| BORROWER | DATE | BORROWER | DATE |




LOAN #: 167628989

## DEFINITION OF TRUTH-IN-LENDING TERMS

### ANNUAL PERCENTAGE RATE

This is not the Note rate for which the borrower applied. The Annual Percentage Rate (APR) is the cost of the loan in percentage terms taking into account various loan charges of which interest is only one such charge. Other charges which are used in calculation of the Annual Percentage Rate are Private Mortgage Insurance or FHA Mortgage Insurance Premium (when applicable) and Prepaid Finance Charges (loan discount, origination fees, prepaid interest and other credit costs). The APR is calculated by spreading these charges over the life of the loan which results in a rate higher than the interest rate shown on your Mortgage/Deed of Trust Note.

### PREPAID FINANCE CHARGES

Prepaid Finance Charges are certain charges made in connection with the loan and which must be paid upon the close of the loan. These charges are defined by the Federal Reserve Board in Regulation Z and the charges must be paid by the borrower only, and not the seller if applicable. Non-Inclusive examples of such charges are: Loan origination fee, "Points" or Discount, Private Mortgage Insurance or FHA Mortgage Insurance, Tax Service Fee. Some loan charges are specifically excluded from the Prepaid Finance Charge such as appraisal fees and credit report fees.

Prepaid Finance Charges are totaled and then subtracted from the Loan Amount (the face amount of the Deed of Trust/Mortgage Note). The net figure is the Amount Financed as explained below.

### FINANCE CHARGE

The amount of interest, prepaid finance charge and certain insurance premiums (if any) which the borrower will be expected to pay over the life of the loan.

### AMOUNT FINANCED

The Amount Financed is the loan amount applied for less the prepaid finance charges. Prepaid finance charges can be found on the Good Faith Estimate. For example if the borrower's note is for $100,000 and the Prepaid Finance Charges total $5,000, the Amount Financed would be $95,000. The Amount Financed is the figure on which the Annual Percentage Rate is based.

### TOTAL OF PAYMENTS

This figure represents the total of all payments made toward principal, interest and mortgage insurance (if applicable).

### PAYMENT SCHEDULE

The dollar figures in the Payment Schedule represent principal, interest, plus Private Mortgage Insurance (if applicable). These figures will not reflect taxes and insurance escrows or any temporary buydown payments contributed by the seller.

# EXHIBIT 2

**A.**

**CHICAGO TITLE INSURANCE COMPANY**
**CHICAGO TITLE AND TRUST COMPANY**

CLOSER: LAURA DEBELINA

DATE OF PRINTING: 04/20/07
TIME OF PRINTING: 27:28

**SETTLEMENT STATEMENT**
**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**

**B. TYPE OF LOAN**

| 1. ☐ FHA | 2. ☐ FmHA | 3. ☒ CONV. UNINS. |
|---|---|---|
| 4. ☐ VA | 5. ☐ CONV. INS. | |

6. File Number: **SA3915130**

7. Loan Number: 167628984   | 927031115-001 LAN NA

8. Mortgage Insurance Case Number

**C. NOTE:** This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

**D. NAME OF BORROWER:** SONIA JENKINS
   **ADDRESS:** 8640 SOUTH KENWOOD AVENUE
   CHICAGO                    ILLINOIS              60619

**E. NAME OF SELLER:**
   **ADDRESS:**

**F. NAME OF LENDER:** COUNTRYWIDE HOME LOANS, INC. d/b/a, SEE ATTACHED
   **ADDRESS:** 2375 NORTH GLENVILLE DRIVE
   RICHARDSON          TEXAS              75082

**G. PROPERTY LOCATION:** 8640 S. KENWOOD AVENUE
   CHICAGO             ILLINOIS            60619

| **H. SETTLEMENT AGENT:** CHICAGO TITLE AND TRUST COMPANY | **I. SETTLEMENT DATE:** |
|---|---|
| **ADDRESS:** 3225 N. ASHLAND AVENUE CHICAGO  ILLINOIS  60657 | April 20, 2007 |
| **PLACE OF SETTLEMENT:** 3225 N. ASHLAND AVENUE | **DISBURSEMENT DATE:** |
| **ADDRESS:** CHICAGO  ILLINOIS  60657 | April 25, 2007 |

| J. SUMMARY OF BORROWER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER:** | | **400. GROSS AMOUNT DUE TO SELLER:** | |
| 101. Contract sales price | | 401. Contract sales price | |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement charges to borrower (line 1400) | 8,976.04 | 403. | |
| 104. PAYOFF TO COUNTRYWIDE HOME LOANS | 119,777.29 | 404. | |
| 105. PAYOFF TO FIFTH THIRD | 16,745.00 | 405. | |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 106. City/town taxes    to | | 406. City/town taxes     to | |
| 107. County taxes    to | | 407. County taxes     to | |
| 108. Assessments    to | | 408. Assessments     to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. GROSS AMT DUE FROM BORROWER** | 145,392.33 | **420. GROSS AMT DUE TO SELLER** | |
| **200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER:** | |
| 201. Deposit or earnest money | | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | 154,000.00 | 502. Settlement charges to seller (line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first mortgage loan | |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210. City/town taxes    to | | 510. City/town taxes     to | |
| 211. County taxes    to | | 511. County taxes     to | |
| 212. Assessments    to | | 512. Assessments     to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **230. TOTAL PAID BY/FOR BORROWER** | 154,000.00 | **520. TOTAL REDUCTIONS AMT DUE SELLER** | |
| **300. CASH AT SETTLEMENT FROM/TO BORROWER** | | **600. CASH AT SETTLEMENT TO/FROM SELLER** | |
| 301. Gross amt due from borrower (line 120) | 145,392.33 | 601. Gross amt due to seller (line 420) | |
| 302. Less amts paid by/for borrower (line 220) | 154,000.00 | 602. Less reductions in amt due seller (line 520) | 0.00 |
| 303. CASH(☒ FROM)(☐ TO) BORROWER | 8,607.67 | 603. CASH(☐ TO)(☒ FROM) SELLER | 0.00 |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

Borrower _Sonia Jenkins_     Seller _____

SONIA JENKINS

To the best of my knowledge, the HUD-1 Settlement Statement which I have prepared is a true and accurate account of the funds which were received and have been or will be disbursed by the undersigned as part of the settlement of this transaction.

Settlement Agent _____     Date 4/20/07

WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

LAN

HUD-1 (3/86) RESPA, HB 4305.2

| OE24/ABS# SA3915130 | L. SETTLEMENT CHARGES | TIME OF PRINTING: 17:26 |
|---|---|---|
| ESC# 027031115  LAN  NA | | DATE OF PRINTING: 04/20/07 |

| | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|
| 700. TOTAL SALES/BROKER'S COMMISSION based on price | | | |
| $            @       %= | | | |
| Division of Commission (line 700) as follows: | | | |
| 701. LB: | $            to | | |
| 702. SB: | $            to | | |
| 703. Commission paid at Settlement | | | |
| (Money retained by broker applied to commission $            ) | | | |
| 704. Other sales agent charges: | | | |
| 705. Additional commission: | $            to | | |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN** | | | |
| 801. Loan Origination Fee | $ | | |
| 802. Loan Discount | % | | |
| 803. Appraisal Fee to | | 12.00 | |
| 804. Credit Report to  LANDSAFE CREDIT INC | | | |
| 805. Lender's Inspection Fee to | | | |
| 806. Mortgage Insurance Application Fee to | | | |
| 807. Assumption Fee to | | | |
| 808. BROKER ORIGINATION FEE TO BARRISTER MORTGAGE | | 3,750.00 | |
| 809. BROKER PROCESSING FEE TO BARRISTER MORTGAGE | | 500.00 | |
| 810. BROKER ADMINISTRATION FEE TO BARRISTER MORTGAGE | | 500.00 | |
| 811. PREMIUM PD TO BARRISTER MTG BY LENDER @1540.00 POC | | | |
| 812. ADDITIONAL ITEMS PAYABLE IN CONNECTION WITH LOAN (ATTACHED) | | 811.00 | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | | |
| 901. Interest from  04/25/07  to 05/01/07  @$  37.3400 /day for  6 days | | 224.04 | |
| 902. Mortgage Insurance Premium for         0.00         months to | | | |
| 903. Hazard Insurance Premium for        1.00       years to   STATE FARM | | 2,064.00 | |
| 904. | | | |
| 905. | | | |
| **1000. RESERVES DEPOSITED WITH LENDER** | | | |
| 1001. Hazard Insurance       0.00  month @$           per month | | | |
| 1002. Mortgage Insurance      0.00  month @$           per month | | | |
| 1003. City property taxes     0.00  month @$           per month | | | |
| 1004. County property taxes   0.00  month @$           per month | | | |
| 1005. Annual assessments      0.00  month @$           per month | | | |
| 1006.                         0.00  month @$           per month | | | |
| 1007.                         0.00  month @$           per month | | | |
| 1008. Aggregate Accounting Adjustment | | 0.00 | 0.00 |
| **1100. TITLE CHARGES** | | | |
| 1101. Settlement or Closing Fee           to CHICAGO TITLE AND TRUST COMPANY | | 130.00 | |
| 1102. Abstract or title search            to | | | |
| 1103. Title examination                   to CHICAGO TITLE INSURANCE COMPANY | | 300.00 | |
| 1104. Title insurance binder              to | | | |
| 1105. Document preparation                to | | | |
| 1106. Notary fees                         to | | | |
| 1107. Attorney's fee                      to | | | |
| 1108. Title insurance          to CHICAGO TITLE INSURANCE COMPANY | | 295.00 | |
| (includes above items numbers:) | | | |
| 1109. Lender's coverage  $153,750.00      $       420.00 | | | |
| 1110. Owner's coverage   $0.00            $ | | | |
| 1111. EXPRESS DELIVERY FEE TO CTIC | | 50.00 | |
| 1112. 12 MONTH CHAIN OF TITLE | | 125.00 | |
| 1113. STATE OF IL REG. FEE TO CTI | | 3.00 | |
| **1200. GOVERNMENT RECORDING AND TRANSFER CHARGES** | | | |
| 1201. Recording fees: Deed $    35.00 ; Mortgage $    70.00 ; Release $ | | 106.00 | |
| 1202. City/county tax/stamps:  Deed $          ; Mortgage $ | | | |
| 1203. State tax/stamps:        Deed $          ; Mortgage $ | | | |
| 1204. | | | |
| 1205. | | | |
| **1300. ADDITIONAL SETTLEMENT CHARGES** | | | |
| 1301. Survey                 to | | | |
| 1302. Pest Inspection        to | | | |
| 1303. | | | |
| 1304. | | | |
| 1305. | | | |
| 1306. | | | |
| 1307. BROKER FULL APPRAISAL TO ATLANTIC APP.  P | | POC | |
| **1400. TOTAL SETTLEMENT CHARGES**   (enter on lines 103, Section J and 502, Section K) | | 8,870.04 | |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

Borrower _____     Seller _____

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause funds to be disbursed in accordance with this statement.

Settlement Agent _____     Date  4/20/07

WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

LAB                                                                HUD-1 (3/86) RESPA, HB 4305.2

| ORD#/ABB# | 523935130 | | SUPPLEMENTAL PAGE | TIME OF PRINTING: 17:28 |
|---|---|---|---|---|
| ESC# | 027031115 | LAN  NA | | DATE OF PRINTING: 04/20/07 |

### ADDITIONAL BUYER SETTLEMENT CHARGES

| | | | CHARGE AMOUNT |
|---|---|---|---|
| 812.001 | TAX SERVICE FEE TO COUNTRYWIDE TAX SER. | $ | 90.00 |
| 812.002 | FLOOD CHECK FEE TO LANDSAFE FLOOD DET. | | 26.00 |
| 812.003 | UNDERWRITING FEE TO COUNTRYWIDE HOME LOA | | 695.00 |
| TOTAL ADDITIONAL ITEMS PAYABLE IN CONNECTION WITH LOAN   (LINE 812) | $ | | 811.00 |

### ADDITIONAL SELLER SETTLEMENT CHARGES

CHARGE AMOUNT

### ADDITIONAL LENDER SETTLEMENT LOANS

| | | | LOAN AMOUNT |
|---|---|---|---|
| 202.001 | COUNTRYWIDE HOME LOANS, INC. d/b/a | $ | 154,000.00 |
| TOTAL Additional Settlement Loans to Lender (LINE 202) | $ | | 154,000.00 |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

DELIA JENKINS

To the best of my knowledge, the HUD-1 Settlement Statement which I have prepared is a true and accurate account of the funds which were received and have been or will be disbursed by the undersigned as part of the settlement of this transaction.

4/20/07

Settlement Agent                                                Date

WARNING: It is a crime to knowingly make false statements to the United States on this or any similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

*EXHIBIT C*

# United States District Court
## District of Massachusetts (Boston)
## CIVIL DOCKET FOR CASE #: 1:07-cv-11275-NG

Miller et al v. Countrywide Bank, N.A., et al
Assigned to: Judge Nancy Gertner
Demand: $9,999,000
Cause: 42:405 Fair Housing Act

Date Filed: 07/12/2007
Jury Demand: Both
Nature of Suit: 890 Other Statutory Actions
Jurisdiction: Federal Question

**Plaintiff**

**Gillian Miller**                    represented by   **Gary E. Klein**
Roddy Klein & Ryan
727 Atlantic Avenue
2nd Floor
Boston, MA 02111
617-357-5500 ext. 15
Fax: 617-357-5030
Email: klein@roddykleinryan.com
*ATTORNEY TO BE NOTICED*

**Gillian R. Feiner**
Roddy, Klein and Ryan
2nd Floor
727 Atlantic Avenue
Boston, MA 02111
617-357-5500 ext. 20
Fax: 617-357-5030
*TERMINATED: 12/10/2007*
*ATTORNEY TO BE NOTICED*

**Kevin Costello**
Roddy, Klein and Ryan
727 Atlantic Avenue
Boston, MA 02111
617-357-5500 ext. 20
Fax: 617-357-5030
Email: costello@roddykleinryan.com
*TERMINATED: 05/06/2008*
*ATTORNEY TO BE NOTICED*

**Matthew E. Van Tine**
Miller Law LLC
115 S. LaSalle Street
Suite 2910
Chicago, IL 60603
312-332-3400
Fax: 312-676-2676
Email: mvantine@millerlawllc.com
*ATTORNEY TO BE NOTICED*

**Shennan Alexandra Kavanagh**

Roddy, Klein and Ryan
2nd Floor
727 Atlantic Avenue
Boston, MA 02111
617 357 5500 ext. 12
Fax: 617 357 5030
Email: kavanagh@roddykleinryan.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Lakisha Austin**                    represented by    **Gary E. Klein**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gillian R. Feiner**
(See above for address)
*TERMINATED: 12/10/2007*
*ATTORNEY TO BE NOTICED*

**Kevin Costello**
(See above for address)
*TERMINATED: 05/06/2008*
*ATTORNEY TO BE NOTICED*

**Matthew E. Van Tine**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Shennan Alexandra Kavanagh**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Arthur Davis**                    represented by    **Gary E. Klein**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gillian R. Feiner**
(See above for address)
*TERMINATED: 12/10/2007*
*ATTORNEY TO BE NOTICED*

**Kevin Costello**
(See above for address)
*TERMINATED: 05/06/2008*
*ATTORNEY TO BE NOTICED*

**Matthew E. Van Tine**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Shennan Alexandra Kavanagh**
(See above for address)

*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Luella Davis**                                      represented by  **Gary E. Klein**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gillian R. Feiner**
(See above for address)
*TERMINATED: 12/10/2007*
*ATTORNEY TO BE NOTICED*

**Kevin Costello**
(See above for address)
*TERMINATED: 05/06/2008*
*ATTORNEY TO BE NOTICED*

**Matthew E. Van Tine**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Shennan Alexandra Kavanagh**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Countrywide Bank, N.A.**                           represented by  **James W. McGarry**
Goodwin Procter, LLP
53 State Street
Exchange Place
Boston, MA 02109
617-570-1332
Fax: 617-227-8591
Email: jmcgarry@goodwinprocter.com
*ATTORNEY TO BE NOTICED*

**Michelle R. Gonnam**
Goodwin Procter LLP
Exchange Place
53 State Street
Boston, MA 02109
617-570-8328
Fax: 617-523-1231
Email: mgonnam@goodwinprocter.com
*ATTORNEY TO BE NOTICED*

**Thomas M. Hefferon**
Goodwin Procter LLP
901 New York Avenue, NW
9th Floor East

Washington, DC 20001
202-346-4000
Fax: 202-346-4444
Email: thefferon@goodwinprocter.com
*ATTORNEY TO BE NOTICED*

**Defendant**
**Countrywide Home Loans, Inc.**                    represented by **James W. McGarry**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michelle R. Gonnam**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas M. Hefferon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**
**Countrywide Correspondent Lending**              represented by **James W. McGarry**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michelle R. Gonnam**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas M. Hefferon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**
**Full Spectrum Lending, Inc.**                     represented by **James W. McGarry**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michelle R. Gonnam**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Thomas M. Hefferon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**
**Summit Mortgage LLC**                             represented by **William A. Worth**
Prince, Lobel, Glovsky & Tye LLP
100 Cambridge Street
Suite 2200
Boston, MA 02114
617-456-8005

Fax: 617-456-8100
Email: waworth@plgt.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Loans for Residential Homes Mortgage Corp.**

represented by **Michael R. Hagopian**
Hagopian Law Office
212 Greenwich Avenue
Warwick, RI 02886
401-384-8080
Fax: 401-384-8082
Email: michael@hagopianlaw.com
*TERMINATED: 03/06/2008*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 07/12/2007 | 1 | COMPLAINT against Summit Mortgage LLC, Loans for Residential Homes Mortgage Corp., Countrywide Bank, N.A., Countrywide Home Loans, Inc., Countrywide Correspondent Lending, Full Spectrum Lending, Inc. Filing fee: $ 350, receipt number 1590027, filed by Gillian Miller, Lakisha Austin, Arthur Davis, Luella Davis. (Attachments: # 1 Civil Action Cover Sheet# 2 Category Form# 3 Exhibit 1-10)(Klein, Gary) (Entered: 07/12/2007) |
| 07/12/2007 | | ELECTRONIC NOTICE of Case Assignment. Judge Richard G. Stearns assigned to case. If the trial Judge issues an Order of Reference of any matter in this case to a Magistrate Judge, the matter will be transmitted to Magistrate Judge Sorokin (Nici, Richard) (Entered: 07/12/2007) |
| 07/12/2007 | | Summons Issued as to Summit Mortgage LLC, Loans for Residential Homes Mortgage Corp., Countrywide Bank, N.A., Countrywide Home Loans, Inc., Countrywide Correspondent Lending, Full Spectrum Lending, Inc.. (Nici, Richard) (Entered: 07/12/2007) |
| 07/24/2007 | 2 | SUMMONS Returned Executed Summit Mortgage LLC served on 7/19/2007, answer due 8/8/2007. (Feiner, Gillian) (Entered: 07/24/2007) |
| 07/26/2007 | 3 | STIPULATION *(Joint Stipulation and Order to Extend Time to Answer or Otherwise Respond to the Complaint)* by Countrywide Bank, N.A., Countrywide Home Loans, Inc., Countrywide Correspondent Lending, Full Spectrum Lending, Inc.. (McGarry, James) (Entered: 07/26/2007) |
| 07/27/2007 | 4 | NOTICE of Appearance by James W. McGarry on behalf of Countrywide Bank, N.A., Countrywide Home Loans, Inc., Countrywide Correspondent Lending, Full Spectrum Lending, Inc. (McGarry, James) (Entered: 07/27/2007) |
| 07/27/2007 | 5 | NOTICE of Appearance by Thomas M. Hefferon on behalf of Countrywide Bank, N.A., Countrywide Home Loans, Inc., Countrywide Correspondent Lending, Full Spectrum Lending, Inc. (Hefferon, Thomas) (Entered: 07/27/2007) |
| 07/27/2007 | 6 | CORPORATE DISCLOSURE STATEMENT by Countrywide Bank, N.A., Countrywide Home Loans, Inc., Countrywide Correspondent Lending, Full Spectrum Lending, Inc.. (McGarry, James) (Entered: 07/27/2007) |
| 07/30/2007 | 7 | NOTICE of Appearance by Gillian R. Feiner on behalf of Gillian Miller, Lakisha Austin, Arthur Davis, Luella Davis (Feiner, Gillian) (Entered: 07/30/2007) |

| | | |
|---|---|---|
| 07/30/2007 | 8 | NOTICE of Appearance by Shennan Alexandra Kavanagh on behalf of Gillian Miller, Lakisha Austin, Arthur Davis, Luella Davis (Kavanagh, Shennan) (Entered: 07/30/2007) |
| 08/06/2007 | 9 | SUMMONS Returned Executed by Gillian Miller, Lakisha Austin, Arthur Davis, Luella Davis. Loans for Residential Homes Mortgage Corp. served on 7/20/2007 (Feiner, Gillian) Modified on 8/6/2007 (Flaherty, Elaine). (Entered: 08/06/2007) |
| 08/06/2007 | 10 | SUMMONS Returned Executed Full Spectrum Lending, Inc. served on 7/19/2007, answer due 8/8/2007. (Feiner, Gillian) (Entered: 08/06/2007) |
| 08/06/2007 | 11 | SUMMONS Returned Executed Countrywide Correspondent Lending served on 7/19/2007, answer due 8/8/2007. (Feiner, Gillian) (Entered: 08/06/2007) |
| 08/06/2007 | 12 | SUMMONS Returned Executed Countrywide Home Loans, Inc. served on 7/19/2007, answer due 8/8/2007. (Feiner, Gillian) (Entered: 08/06/2007) |
| 08/06/2007 | 13 | SUMMONS Returned Executed Countrywide Bank, N.A. served on 7/19/2007, answer due 8/8/2007. (Feiner, Gillian) (Entered: 08/06/2007) |
| 08/06/2007 | | Notice of correction to docket made by Court staff. Correction: doc 9 corrected because: to reflect correct dates (Flaherty, Elaine) (Entered: 08/06/2007) |
| 08/24/2007 | | Set Deadlines/Hearings: Loans for Residential Homes Mortgage Corp. answer due 8/24/2007. (Flaherty, Elaine) (Entered: 08/28/2007) |
| 08/24/2007 | 14 | ANSWER to Complaint by Loans for Residential Homes Mortgage Corp..(Flaherty, Elaine) (Entered: 09/04/2007) |
| 09/10/2007 | 15 | ANSWER to Complaint with Jury Demand by Summit Mortgage LLC.(Worth, William) (Entered: 09/10/2007) |
| 09/10/2007 | 16 | MOTION to Dismiss by Countrywide Bank, N.A., Countrywide Correspondent Lending, Full Spectrum Lending, Inc..(Hefferon, Thomas) (Entered: 09/10/2007) |
| 09/10/2007 | 17 | MEMORANDUM in Support re 16 MOTION to Dismiss filed by Countrywide Bank, N.A., Countrywide Correspondent Lending, Full Spectrum Lending, Inc.. (Hefferon, Thomas) (Entered: 09/10/2007) |
| 09/13/2007 | 18 | NOTICE of Appearance by Michelle R. Gonnam on behalf of Countrywide Bank, N.A., Countrywide Home Loans, Inc., Countrywide Correspondent Lending, Full Spectrum Lending, Inc. (Gonnam, Michelle) (Entered: 09/13/2007) |
| 09/18/2007 | 19 | NOTICE by Gillian Miller, Lakisha Austin, Arthur Davis, Luella Davis *of Firm Name Change* (Klein, Gary) (Entered: 09/18/2007) |
| 09/19/2007 | 20 | STIPULATION *AND ORDER TO EXTEND TIME TO RESPOND TO THE DEFENDANTS' MOTION TO DISMISS* by Gillian Miller, Lakisha Austin, Arthur Davis, Luella Davis, Countrywide Bank, N.A., Countrywide Home Loans, Inc., Countrywide Correspondent Lending, Full Spectrum Lending, Inc.. (Klein, Gary) (Entered: 09/19/2007) |
| 09/21/2007 | 21 | NOTICE of Appearance by Matthew E. Van Tine on behalf of Gillian Miller, Lakisha Austin, Arthur Davis, Luella Davis (Van Tine, Matthew) (Entered: 09/21/2007) |
| 10/04/2007 | | Judge Richard G. Stearns : ELECTRONIC ENDORSEMENT re 20 Stipulation, filed by Arthur Davis, Countrywide Bank, N.A., Countrywide Correspondent Lending, Luella Davis, Full Spectrum Lending, Inc., Gillian Miller, Countrywide Home Loans, Inc., Lakisha Austin "Stipulation approved UNTIL 10/15/07." (Flaherty, Elaine) (Entered: 10/04/2007) |

| | | |
|---|---|---|
| 10/15/2007 | 22 | Opposition re 16 MOTION to Dismiss *Filed By Countrywide And Memorandum In Support Thereof* filed by Gillian Miller, Lakisha Austin, Arthur Davis, Luella Davis. (Klein, Gary) (Entered: 10/15/2007) |
| 10/25/2007 | | ELECTRONIC NOTICE of Hearing on Motion 16 MOTION to Dismiss : Motion Hearing set for 1/18/2008 02:30 PM in Courtroom 21 before Judge Richard G. Stearns. (Johnson, Mary) (Entered: 10/25/2007) |
| 11/14/2007 | 23 | DECLARATION *OF GARY KLEIN FOR THE PURPOSE OF SUBMITTING SUPPLEMENTAL AUTHORITY DIRECTLY RELEVANT TO COUNTRYWIDE'S MOTION TO DISMISS* by Gillian Miller, Lakisha Austin, Arthur Davis, Luella Davis. (Attachments: # 1 Declaration Exhibits 1 - 6)(Klein, Gary) (Entered: 11/14/2007) |
| 11/16/2007 | 24 | MOTION for Leave to File *a Reply Brief (Countrywide's Unopposed Motion for Leave to File a Reply Brief in Further Support of Motion to Dismiss)* by Countrywide Bank, N.A., Countrywide Home Loans, Inc., Countrywide Correspondent Lending, Full Spectrum Lending, Inc.. (Attachments: # 1 Reply Brief in Support of the Countrywide Defendants' Motion to Dismiss)(McGarry, James) (Entered: 11/16/2007) |
| 11/19/2007 | | Judge Richard G. Stearns : Electronic ORDER entered granting 24 Motion for Leave to File; Counsel using the Electronic Case Filing System should now file the document for which leave to file has been granted in accordance with the CM/ECF Administrative Procedures. Counsel must include - Leave to file granted on (date of order)- in the caption of the document. (York, Steve) (Entered: 11/21/2007) |
| 11/21/2007 | 25 | REPLY to Response to Motion re 16 MOTION to Dismiss *(Reply Brief In Support of the Countrywide Defendants' Motion to Dismiss)* filed by Countrywide Bank, N.A., Countrywide Home Loans, Inc., Countrywide Correspondent Lending, Full Spectrum Lending, Inc.. (McGarry, James) (Entered: 11/21/2007) |
| 12/07/2007 | 26 | NOTICE of Withdrawal of Appearance by Gillian R. Feiner (Feiner, Gillian) (Entered: 12/07/2007) |
| 12/21/2007 | 27 | DECLARATION *of Gary Klein for the Purpose of Submitting Supplemental Authority Directly Relevant to Countrywide's Motion to Dismiss* by Gillian Miller, Lakisha Austin, Arthur Davis, Luella Davis. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4)(Roddy, John) (Entered: 12/21/2007) |
| 01/11/2008 | | ELECTRONIC NOTICE OF RESCHEDULING: "due to a Court conflict, the motion to dismiss hearing is re-scheduled to Thursday, 3/20/2008 at 02:30 PM in Courtroom 21 before Judge Richard G. Stearns. " Mary Johnson, Deputy Clerk.(Johnson, Mary) . (Entered: 01/11/2008) |
| 01/17/2008 | 28 | Assented to MOTION to Continue Hearing to April 3, 2008 or April 4, 2008 by Countrywide Bank, N.A., Countrywide Home Loans, Inc., Countrywide Correspondent Lending, Full Spectrum Lending, Inc..(McGarry, James) (Entered: 01/17/2008) |
| 01/23/2008 | 29 | Opposition re 28 Assented to MOTION to Continue Hearing to April 3, 2008 or April 4, 2008 filed by Gillian Miller, Lakisha Austin, Arthur Davis, Luella Davis. (Klein, Gary) (Entered: 01/23/2008) |
| 01/23/2008 | | Judge Richard G. Stearns: Electronic ORDER entered denying 28 Motion to Continue. "In light of the fact that this Court's calendar cannot accommodate an earlier hearing date other than March 20, 2008, the Court must deny defendants' request for a continuance and the hearing will remain on the calendar for March 20, 2008 at 2:30 P.M. SO ORDERED." R. G. Stearns, USDJ. (Johnson, Mary) Modified on 1/23/2008 (Johnson, Mary). (Entered: |

| | | |
|---|---|---|
| 02/04/2008 | 30 | Assented to MOTION to Continue Hearing to April 3, 2008 by Countrywide Bank, N.A., Countrywide Home Loans, Inc., Countrywide Correspondent Lending, Full Spectrum Lending, Inc..(McGarry, James) (Entered: 02/04/2008) |
| 02/05/2008 | | Judge Richard G. Stearns: Electronic ORDER entered granting 30 Motion to Continue. Hearing re-scheduled to Thursday, 4/10/2008 at 02:30 PM in Courtroom 21 before Judge Richard G. Stearns. (Johnson, Mary) (Entered: 02/05/2008) |
| 03/05/2008 | 31 | MOTION to Withdraw as Attorney by Loans for Residential Homes Mortgage Corp.. (Hagopian, Michael) (Entered: 03/05/2008) |
| 03/06/2008 | 32 | DECLARATION *of Gary Klein for the Purpose of Submitting Supplemental Authority Directly Relevant to Countrywide's Motion to Dismiss* by Gillian Miller, Lakisha Austin, Arthur Davis, Luella Davis. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4)(Klein, Gary) (Entered: 03/06/2008) |
| 03/06/2008 | | Judge Richard G. Stearns: Electronic ORDER entered granting 31 Motion to Withdraw as Attorney. (Flaherty, Elaine) (Entered: 03/06/2008) |
| 03/11/2008 | 33 | NOTICE of Appearance by Kevin Costello on behalf of Gillian Miller, Lakisha Austin, Arthur Davis, Luella Davis (Costello, Kevin) (Entered: 03/11/2008) |
| 03/14/2008 | 34 | REPORT of Rule 26(f) Planning Meeting. (Klein, Gary) (Entered: 03/14/2008) |
| 04/08/2008 | 35 | Response by Countrywide Bank, N.A., Countrywide Home Loans, Inc., Countrywide Correspondent Lending, Full Spectrum Lending, Inc. *to Plaintiffs' Submissions of "Supplemental Authority"*. (Attachments: # 1 Exhibit A)(McGarry, James) (Entered: 04/08/2008) |
| 04/10/2008 | | Clerk's Notes for proceedings held before Judge Richard G. Stearns: Motion Hearing held on 4/10/2008 re 16 MOTION to Dismiss filed by Countrywide Bank, N.A., Countrywide Correspondent Lending, Full Spectrum Lending, Inc. After a hearing, the court takes the matter under advisement. (Court Reporter: Gibbons, James)(Attorneys present: Gary E. Klein and Shennan Alexandra Kavanagh for plaintiffs; Thomas M. Hefferon and James W. McGarry for defendants) (Prussia, Kevin) (Entered: 04/10/2008) |
| 04/17/2008 | 36 | Judge Richard G. Stearns: ORDER OF RECUSAL. case sent to draw clerk to be redrawn (Flaherty, Elaine) (Entered: 04/17/2008) |
| 04/22/2008 | 37 | NOTICE of Withdrawal of Appearance by Kevin Costello (Costello, Kevin) (Entered: 04/22/2008) |
| 04/23/2008 | | ELECTRONIC NOTICE of Reassignment. Judge Joseph L. Tauro added. Judge Richard G. Stearns no longer assigned to case. (Sonnenberg, Elizabeth) (Entered: 04/23/2008) |
| 05/06/2008 | 38 | Judge Joseph L. Tauro: ORDER entered. ORDER OF RECUSAL.(Abaid, Kimberly) (Entered: 05/07/2008) |
| 05/08/2008 | | ELECTRONIC NOTICE of Reassignment. Judge Nancy Gertner added. Judge Joseph L. Tauro no longer assigned to case. (Gaudet, Jennifer) (Entered: 05/08/2008) |
| 05/19/2008 | 39 | DECLARATION *Fourth Declaration of Gary Klein for the Purpose of Submitting Supplemental Authority Directly Relevant to Countrywide's Motion to Dismiss* by Gillian Miller. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Costello, Kevin) (Entered: 05/19/2008) |
| 05/20/2008 | | ELECTRONIC NOTICE of Hearing on 16 MOTION to Dismiss : Motion Hearing set for |

7/9/2008 03:15 PM in Courtroom 2 before Judge Nancy Gertner. (Molloy, Maryellen) (Entered: 05/20/2008)

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 05/28/2008 18:17:52 | | | |
| **PACER Login:** | bf0014 | **Client Code:** | 15025002 kmv |
| **Description:** | Docket Report | **Search Criteria:** | 1:07-cv-11275-NG |
| **Billable Pages:** | 6 | **Cost:** | 0.48 |

(JCRx), DISCOVERY

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA (Eastern Division - Riverside)
# CIVIL DOCKET FOR CASE #: 5:07-cv-01161-VAP-JCR

Gabriel Garcia v. Countrywide Financial Corporation et al
Assigned to: Judge Virginia A. Phillips
Referred to: Magistrate Judge John Charles Rayburn, Jr
Cause: 28:1331 Federal Question: Other Civil Rights

Date Filed: 09/12/2007
Jury Demand: Plaintiff
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

**Plaintiff**

**Gabriel Garcia**

represented by **Andrew S Friedman**
Bonnett Fairbourn Friedman & Balint PC
2901 North Central Avenue Suite 1000
Phoenix, AZ 85012
602-274-1100
Email: afriedman@bffb.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jonathan E Gertler**
Chavez and Gertler
42 Miller Avenue
Mill Valley, CA 94941
415-381-5599
Email: jon@chavezgertler.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark A Chavez**
Chavez & Gertler
42 Miller Ave
Mill Valley, CA 94941
415-381-5599
Email: mark@chavezgertler.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nance F Becker**
Chavez and Gertler
42 Miller Avenue
Mill Valley, CA 94941
415-381-5599
Email: nance@chavezgertler.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wendy J Harrison**
Bonnett Fairbourn Friedman & Balint
2901 N Central Ave, Ste 1000
Phoenix, AZ 85022
602-274-1100
Email: wharrison@bffb.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Theodore J Pintar**
Coughlin Stoia Geller Rudman and Robbins
LLP
655 West Broadway Suite 1900
San Diego, CA 92101-3301
619-231-1058
Email: tedp@csgrr.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Countrywide Financial Corporation**          represented by **Brooks R Brown**
Goodwin Procter LLP
10250 Constellation Boulevard
21st Floor
Los Angeles, CA 90067-6221
310-788-5148
Email: bbrown@goodwinprocter.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James W McGarry**
Goodwin Procter LLP
53 State Street
Boston, MA 02109
617-570-1332
Email: jmcgarry@goodwinprocter.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Thomas M Hefferon**
Goodwin Procter
901 New York Avenue Northwest
Washington, DC 20001
202-346-4000
Email: thefferon@goodwinprocter.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Countrywide Home Loans Inc**          represented by **Brooks R Brown**
(See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James W McGarry**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Thomas M Hefferon**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/12/2007 | 1 | COMPLAINT against defendants Countrywide Financial Corporation, Countrywide Home Loans INc.(Filing fee $ 350) Demand for jury trial., filed by plaintiff Gabriel Garcia.(am) (Entered: 09/14/2007) |
| 09/12/2007 | | 20 Day Summons Issued re Complaint - (Discovery) 1 as to Countrywide Financial Corporation, Countrywide Home Loans INc. (am) (Entered: 09/14/2007) |
| 09/12/2007 | 2 | NOTICE of Interested Parties filed by Plaintiff Gabriel Garcia. (am) (Entered: 09/14/2007) |
| 09/14/2007 | 3 | STANDING ORDER by Judge Virginia A. Phillips (See document for further information) (am) (Entered: 09/18/2007) |
| 09/27/2007 | 4 | PROOF OF SERVICE Executed by plaintiff Gabriel Garcia, upon Countrywide Financial Corporation served on 9/17/2007, answer due 10/7/2007. The Summons and Complaint were served by Personal service, by State statute, upon Becky Degeorge Agent. Due Dilligence declaration not attached. Original Summons not returned. (am) (Entered: 10/03/2007) |
| 11/07/2007 | 5 | STIPULATION AND ORDER signed by Judge Virginia A. Phillips : granting defendants until 11/8/07 to respond to the Complaint - (Discovery) 1 . (gg) (Entered: 11/07/2007) |
| 11/08/2007 | 6 | NOTICE OF MOTION AND MOTION to Dismiss filed by defendants Countrywide Financial Corporation, Countrywide Home Loans INc.Motion set for hearing on 12/10/2007 at 10:00 AM before Judge Virginia A. Phillips. Lodged Proposed Order. (am) (Entered: 11/15/2007) |
| 11/08/2007 | 7 | DISCLOSURE STATEMENT filed by Defendants Countrywide Financial Corporation, Countrywide Home Loans INc (am) (Entered: 11/15/2007) |
| 11/20/2007 | 8 | STIPULATION AND ORDER TO EXTEND HEARING DATE SET FOR DEFENDANTS MOTION TO DISMISS. by Judge Virginia A. Phillips: re MOTION to Dismiss 6 . Responses due by 12/3/2007 Replies due by 12/10/2007. Motion set for hearing on 12/17/2007 at 10:00 AM before Judge Virginia A. Phillips. (am) (Entered: 11/27/2007) |
| 11/20/2007 | 9 | APPLICATION OF NON-RESIDENT ATTORNEY James W. McGarry for Leave to Appear Pro Hac Vice. FEE PAID. filed by defendants Countrywide Financial Corporation, Countrywide Home Loans INc. Lodged Proposed Order. (am) (Entered: 11/27/2007) |
| 11/20/2007 | 10 | APPLICATION OF NON-RESIDENT ATTORNEY Thomas M.Hefferon for Leave to Appear Pro Hac Vice. FEE PAID. filed by defendants Countrywide Financial Corporation, Countrywide Home Loans INc. Lodged Proposed Order. (am) (Entered: 11/27/2007) |
| 11/21/2007 | 11 | ORDER by Judge Virginia A. Phillips GRANTING APPLICATION OF NON-RESIDENT |

| | | |
|---|---|---|
| | | ATTORNEY James W. McGarry for Leave to Appear Pro Hac Vice. FEE PAID. 9 (am) (Entered: 11/27/2007) |
| 11/21/2007 | 12 | ORDER by Judge Virginia A. Phillips GRANTING APPLICATION OF NON-RESIDENT ATTORNEY Thomas M.Hefferon for Leave to Appear Pro Hac Vice. FEE PAID. 10 (am) (Entered: 11/27/2007) |
| 11/21/2007 | 13 | PROOF OF SERVICE filed by plaintiff Gabriel Garcia, re Standing Order 3 served on 11/20/07. (ad) (Entered: 12/03/2007) |
| 12/03/2007 | 14 | MEMORANDUM in Opposition to MOTION to Dismiss 6 filed by Plaintiff Gabriel Garcia. (am) (Entered: 12/04/2007) |
| 12/07/2007 | 15 | MINUTES OF IN CHAMBERS ORDER held before Judge Virginia A. Phillips : re: MOTION to Dismiss 6 . Motion reset for hearing on 1/7/2008 at 10:00 AM before Judge Virginia A. Phillips. (am) (Entered: 12/12/2007) |
| 12/10/2007 | 16 | REPLY in support of MOTION to Dismiss 6 filed by Defendants Countrywide Financial Corporation, Countrywide Home Loans INc. (am) (Entered: 12/12/2007) |
| 12/28/2007 | 17 | MINUTES OF IN CHAMBERS AMENDING STANDING ORDER held before Judge Virginia A. Phillips : Effective January 1, 2008, electronic filing ("e-filing") will be mandatory for all new and pending civil cases in the United States District Court for the Central District of California. Information about the Court's Electronic Case Filing system is available on the Court's website at www.cacd.uscourts.gov/cmecf. The "e-filing" of all documents required to be "e-filed" in this matter pursuant to General Order No. 07-08 shall be comple ted by 4:00 p.m. on the date due. Any be stricken by the Court.Counsel shall provide one conformed courtesy copy of any "e-filed" document. With the exception of reply briefs for motions on the Court's hearing calendar, such courtesy copies shall be delivered no later than noon of the day following "e-filing." Courtesy copies of reply briefs, however, shall be provided by 5:00 p.m. on the day of filing, and shall be delivered to the "Courtesy Box," located outside of Courtroom 2 on the 2nd floor at the United States District Court, 3470 Twelfth Street, Riverside,California 92501. (am) (Entered: 12/31/2007) |
| 12/28/2007 | 18 | NOTICE of Supplemental Newly Decided Authority regarding defendants Motion to Dismiss filed by plaintiff Gabriel Garcia. (am) (Entered: 01/03/2008) |
| 01/07/2008 | 19 | MINUTES OF Motion Hearing held before Judge Virginia A. Phillips: Defendant's Motion to Dismiss: Court issues a tentative ruling, hears oral argument and takes the matter under submission. After the Courts final ruling, defendant has 20 days to file an answer.Initials of Preparer glgCourt Reporter: Phyllis Preston. (am) (Entered: 01/09/2008) |
| 01/15/2008 | 20 | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS by Judge Virginia A. Phillips, re MOTION to Dismiss 6 . Defendants shall answer or otherwise respond to the Complaint by January 23, 2007. (am) (Entered: 01/15/2008) |
| 01/16/2008 | 21 | NOTICE of Appearance filed by attorney Theodore J Pintar on behalf of Plaintiff Gabriel Garcia (Pintar, Theodore) (Entered: 01/16/2008) |
| 01/17/2008 | 22 | AMENDED ORDER 20 issued by Judge Virginia A. Phillips, re Defendants' Motion to Dismiss 6 . The Court GRANTS Defendants' Motion to Dismiss as to Plaintiff's claims of disparate treatment discrimination under the FHA, ECOA, and 42 USC 1981 and 1982 with leave to amend; DENIES the Motion to Dismiss as to Plaintiff's claims of disparate impact discrimination; and STRIKES the allegations of fraudulent concealment in Paragraphs 53, 57, and 58 of the Complaint. Defendants shall answer or otherwise respond to the Complaint by 1/23/08. See document for further details. (gg) Modified on 1/22/2008 (gg, ). (Entered: |

| | | 01/18/2008 |
|---|---|---|
| 01/23/2008 | 23 | ANSWER filed by Defendants Countrywide Financial Corporation, Countrywide Home Loans INc.(Brown, Brooks) (Entered: 01/23/2008) |
| 01/29/2008 | 24 | APPLICATION OF NON-RESIDENT ATTORNEY Andrew S. Friedman for Leave to Appear Pro Hac Vice. FEE PAID. filed by plaintiff Gabriel Garcia. Lodged Proposed Order. (am) (Entered: 01/30/2008) |
| 01/31/2008 | 25 | ORDER by Judge Virginia A. Phillips GRANTING APPLICATION OF NON-RESIDENT ATTORNEY Andrew S. Friedman for Leave to Appear Pro Hac Vice. FEE PAID. 24 (am) (Entered: 02/04/2008) |
| 02/08/2008 | 26 | ORDER SETTING SCHEDULING CONFERENCE by Judge Virginia A. Phillips.Scheduling Conference set for 4/21/2008 01:30 PM before Judge Virginia A. Phillips. (ad) (Entered: 02/08/2008) |
| 02/14/2008 | 27 | Joint STIPULATION to Continue Scheduling Conference from April 21, 2008 to April 28, 2008 filed by Defendant Countrywide Financial Corporation, Countrywide Home Loans INc. (Attachments: # 1 Exhibit Exhibit A- Declaration of Brooks R. Brown in Support of Stipulation# 2 Proposed Order Proposed Order to Continue April 28, 2008 Scheduling Conference)(Brown, Brooks) (Entered: 02/14/2008) |
| 02/19/2008 | 28 | ORDER CONTINUING 4/21/08 SCHEDULING CONFERENCE by Judge Virginia A. Phillips, re Stipulation to Continue, 27 Scheduling Conference continued for 5/5/2008 at 01:30 PM before Judge Virginia A. Phillips. (am) (Entered: 02/19/2008) |
| 03/20/2008 | 29 | NOTICE of Change of Attorney Information for attorney Theodore J Pintar counsel for Plaintiff Gabriel Garcia. Changing e-mail to tedp@csgrr.com. Filed by plaintiff Gabriel Garcia (Pintar, Theodore) (Entered: 03/20/2008) |
| 04/28/2008 | 30 | JOINT REPORT Rule 26(f) Discovery Plan *and Case Management Conference Statement* ; estimated length of trial 20, filed by Plaintiff Gabriel Garcia.. (Attachments: # 1 Exhibit A.) (Harrison, Wendy) (Entered: 04/28/2008) |
| 04/28/2008 | 31 | NOTICE AND REQUEST of Settlement Procedure Selection (Sp3); parties request to appear before a retired judicial officer or other dispute resolution body for mediation type settlement proceedings. Filed by Plaintiff Gabriel Garcia (Attachments: # 1 Proposed Order)(Harrison, Wendy) (Entered: 04/28/2008) |
| 05/05/2008 | 32 | MINUTES OF Scheduling Conference held before Judge Virginia A. Phillips: The Court issues an Order to Show Cause why sanctions should not be imposed against plaintiffs counsel for failure to appear at the Court ordered scheduling conference. Such response shall be filed on or before May 23, 2008.Defense counsels declarations as to the amount of fees incurred by their clients for making the appearance at the scheduling conference shall be filed on or before May 23, 2008. The Order to Show Cause hearing or alternate scheduling conference is set for June 2, 2008 at 1:30 p.m. before Judge Virginia A. Phillips.Court Reporter: Phyllis Preston. (am) (Entered: 05/06/2008) |
| 05/23/2008 | 33 | RESPONSE filed by Plaintiff Gabriel Garciato Scheduling Conference,,, Set Hearings,, 32 *Plaintiff's Response to Order to Show Cause* (Attachments: # 1 Exhibit A.)(Friedman, Andrew) (Entered: 05/23/2008) |
| 05/23/2008 | 34 | DECLARATION of Andrew S. Friedman re Response (non-motion) 33 *to Order to Show Cause* filed by Plaintiff Gabriel Garcia. (Friedman, Andrew) (Entered: 05/23/2008) |
| 05/23/2008 | 35 | DECLARATION of Wendy J. Harrison re Response (non-motion) 33 *to Order to Show Cause* |

filed by Plaintiff Gabriel Garcia. (Friedman, Andrew) (Entered: 05/23/2008)

| 05/23/2008 | 36 | DECLARATION of Karen M. Vanderbilt re Response (non-motion) 33 to Order to Show Cause filed by Plaintiff Gabriel Garcia. (Friedman, Andrew) (Entered: 05/23/2008) |
|---|---|---|
| 05/23/2008 | 37 | DECLARATION of Nancy K. Germinaro re Response (non-motion) 33 to Order to Show Cause filed by Plaintiff Gabriel Garcia. (Friedman, Andrew) (Entered: 05/23/2008) |
| 05/23/2008 | 38 | RESPONSE filed by Defendants Countrywide Financial Corporation, Countrywide Home Loans Incto Scheduling Conference,,, Set Hearings,, 32 to May 5, 2008 Order to Show Cause (Brown, Brooks) (Entered: 05/23/2008) |

### PACER Service Center

#### Transaction Receipt

05/28/2008 15:53:53

| PACER Login: | bf0014 | Client Code: | 15025002 kmv |
|---|---|---|---|
| Description: | Docket Report | Search Criteria: | 5:07-cv-01161-VAP-JCR End date: 5/28/2008 |
| Billable Pages: | 4 | Cost: | 0.32 |

KEYS

# United States District Court
## Northern District of Illinois - CM/ECF LIVE, Ver 3.1.3 (Chicago)
### CIVIL DOCKET FOR CASE #: 1:08-cv-02935

Jenkins v. Countrywide Home Loans, Inc.
Assigned to: Honorable David H. Coar
Cause: 42:405 Fair Housing Act

Date Filed: 05/21/2008
Jury Demand: Plaintiff
Nature of Suit: 443 Civil Rights:
Accommodations
Jurisdiction: Federal Question

**Plaintiff**

**Sonia Jenkins**
*on behalf of herself and the classes defined herein*

represented by **Al Hofeld, Jr.**
Law Offices of Al Hofeld, Jr., LLC
208 S. LaSalle Street, Suite #1650
Chicago, IL 60604
(312) 345-1006
Fax: 312-346-3242
Email: al@alhofeldlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Countrywide Home Loans, Inc.**
*doing business as*
America's Wholesale Lender

| Date Filed | # | Docket Text |
|---|---|---|
| 05/21/2008 | 1 | COMPLAINT filed by Plaintiff Sonia Jenkins; Jury Demand. Filing fee $ 350.(Attachments: #(1) Exhibits 1 & 2).(smm) (Entered: 05/21/2008) |
| 05/21/2008 | 2 | CIVIL Cover Sheet. (smm) (Entered: 05/21/2008) |
| 05/21/2008 | 3 | ATTORNEY Appearance for Plaintiff Sonia Jenkins by Al Hofeld, Jr. (smm) (Entered: 05/21/2008) |
| 05/21/2008 | 5 | SUMMONS Issued as to Defendant Countrywide Home Loans, Inc. (smm) (Entered: 05/21/2008) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 05/28/2008 17:23:23 | | |
| **PACER Login:** | bf0014 | **Client Code:** | 15025002 kmv |
| **Description:** | Docket Report | **Search Criteria:** | 1:08-cv-02935 |
| **Billable Pages:** | 1 | **Cost:** | 0.08 |